No. 80-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

KENNETH KIENAS,

Claimant and Appellant,

vs.

JAMES G. PETERSON, Employer, and
STATE COMPENSATION INSURANCE FUND,
Insurer,

Defendant and Respondent.

Appeal from: Workers' Compensation Court
HOnorable William Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Datsopoulos, MacDonald and Lind, Missoula, Montana
Milton Datsopoulos argued, Missoula, Montana

For Respondent:

Tim Reardon argued, Helena, Montana

Submitted: September 9, 1980

Decided: OCT 22 1980

Filed: OCT 22 1980

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by an injured workman from a judgment of the Workers' Compensation Court which denied claimant's petition to reopen a full and final compromise settlement agreement.

Kenneth Kienas (hereinafter called claimant) was injured in an industrial accident while working for his employer, James C. Peterson. At the time of the injury, the employer was enrolled under Plan 3 of the Workers' Compensation Act, with the State Compensation Insurance Fund (hereinafter called State Fund) being the insurer.

Claimant is a thirty-two-year-old man from Missoula, Montana. He was injured in an industrial accident on September 25, 1977, while working as a cook at the Country Kitchen Restaurant in Missoula, Montana. Claimant was injured when, on his way to a cooler located in the kitchen area, he slipped and fell. In an attempt to break or slow his fall, claimant grasped a counter near him, but the counter collapsed and a rack full of dishes and cartons fell on him.

Claimant felt pain in his lower back immediately after the fall. He was initially examined by Dr. C. P. Brooke of Missoula. Later he was referred to Dr. Patrick R. Robins, an orthopedic surgeon. Dr. Robins observed a minimal amount of lower lumbar scoliosis, but X-rays did not reveal any evidence of any recent bony or soft tissue. A physical examination was conducted on claimant which revealed tenderness and spasms in the lower back area. Dr. Robins also noted the physical condition attributed to claimant's old neurological problems. Claimant has not been able to work

for the entire period. He was referred to rehabilitation centers and other clinics--all to no avail. A radiologist at the clinic found "rather significant degenerative changes for a patient of his age, especially at L3-4." These reports were made available to and were in the possession of the Division of Workers' Compensation and the State Fund before any settlement was made with claimant.

After numerous other examinations, Dr. Robins determined that claimant had progressed as far as he was going to, and, therefore, Dr. Robins felt he was unable to give an impairment rating. However, he estimated claimant's impairment rating to be 5 percent and supplied this information to the field representative of the State Fund. Testimony revealed that at the time Dr. Robins made his impairment rating, he did not take into account claimant's preexisting neurological condition. Claimant has cerebral palsy. Claimant asserts that the accident aggravated this preexisting condition and that the settlement offered to claimant did not take this factor into account.

At no time from the date of claimant's injury to his acceptance of the settlement was claimant represented by an attorney, nor did he have counsel as to his claim. The State Fund was aware of claimant's financial difficulties, including his inability to make child support payments. The State Fund was aware of claimant's inability to work, his suffering from cerebral palsy, his persistent back pain, and of medical reports showing degenerative changes in claimant's spinal cord.

The State Fund offered a settlement on a "full and final compromise basis," preventing review or alteration by statute. Claimant contends that the State Fund did not

inform him of other possible settlement plans nor of the chance to receive greater benefits.

A claim for compensation was filed, and compensation benefits were instituted to claimant as of September 26, 1977. These benefits amounted to $65.17 per week. Claimant was paid benefits continuously from September 26, 1977 through June 18, 1978.

Claimant signed a petition for full and final compromise settlement on June 15, 1978. This petition was approved by the division administrator on June 20, 1978, and was concurred in by the Workers' Compensation judge on June 26, 1978. The total amount of the settlement was $4,040.54.

On October 1, 1979, claimant filed in the Workers' Compensation Court a petition for a hearing to reopen claimant's file and to set aside the full and final compromise settlement of June 1978 on the basis of constructive fraud on the part of the State Fund. On December 11, 1979, the case was heard before the Workers' Compensation Court.

The Workers' Compensation Court found that the field representative for the State Fund could not be charged with knowing that the condition of claimant prior to his accident would be aggravated by a slip and fall to the extent that it would make him totally disabled and refused to set aside the full and final compromise settlement.

Subsequent examinations by Dr. Gary D. Cooney, a neurologist, found claimant totally disabled and that the accident could have aggravated this muscular condition. A totally disabled person would be entitled to receive in excess of $115,000 in benefits. Claimant was awarded $4,040.54.

The dispositive issue in this case is whether the full and final compromise settlement agreement entered into by

-4-

the parties was entered into by mutual mistake; and, if so, whether the contract should be set aside.

The full and final compromise settlement entered into by the parties is a contract. The law of contracts applies in construing and determining the validity and enforceability of the settlement agreement. The pertinent statutes provide:

Section 28-2-102, MCA:

"It is essential to the existence of a contract that there be:

"(1) identifiable parties capable of contracting;

"(2) their consent;

"(3) a lawful object; and

"(4) a sufficient cause or consideration."

Section 28-2-301, MCA:

"The consent of the parties to a contract must be:

"(1) free;

"(2) mutual; and

"(3) communicated by each to the other."

Section 28-2-401, MCA:

"(1) An apparent consent is not real or free when obtained through:

". . .

"(e) mistake.

"(2) Consent is deemed to have been obtained through one of the causes mentioned in subsection (1) only when it would not have been given had such cause not existed."

Section 28-2-408, MCA:

"Mistake may be either of fact or law."

Section 28-2-409, MCA:

"Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of

the person making the mistake and consisting in:

"(1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

"(2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed." (Emphasis added.)

We find both parties were mistaken, and there is evidence of an unconscious ignorance of a fact that is material to the contract. Neither party at the time of entering the full and final compromise settlement knew of the exact nature or extent of the injury suffered by claimant. Neither party was aware of any possible disability caused by injury on the preexisting cerebral palsy condition. This information regarding the state of claimant's injury was not available to claimant or to the State Fund at the time of entering into the full and final compromise settlement. It was not until the hearing to reopen the agreement that testimony from a neurologist indicated that the injury could have aggravated or accelerated the prior cerebral palsy. The Workers' Compensation Court noted in its conclusions of law: "It is unfortunate that the information furnished by Dr. Cooney was not available prior to June, 1978 when claimant made his settlement. . ."

The facts in this case are unique. The parties were laboring under a material mistake as to the nature of and the extent of claimant's injuries. The need to fairly compensate the injured worker is the intent and the purpose of the workers' compensation law. The full and final compromise settlement, therefore, must be set aside for mutual mistake of a material fact as to the nature and the extent

of the injury caused by claimant's accident.  Claimant knew
of the cerebral palsy; however, claimant, as well as respon-
dent, did not know of the extent of the injury caused by the
accident.  There is ample evidence on the record for this
Court to conclude that the injury sustained by claimant
could have accelerated the cerebral palsy.  Testimony also
indicated that the injury superimposed on the serious neuro-
muscular disease could cause serious disabling consequences.

The full and final compromise settlement is set aside
for a mutual mistake of a material fact, and the Workers'
Compensation Court is to determine, after a hearing, the
extent of claimant's disability.

Reversed and remanded for proceedings consistent with
this opinion.

_____
                                                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices