No. 83-532

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

WAYNE R. SOLLIE,

        Claimant and Appellant,

   -vs-

PEAVEY COMPANY, Employer,

   and

TRAVELERS INDEMNITY COMPANY,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court of the State of
                Montana, The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hennessey Law Office; Joseph P. Hennessey, Billings,
        Montana

    For Respondent:

        Crowley, Haughey, Hanson, Toole & Dietrich; Randy
        Bishop, Billings, Montana

Submitted on Briefs:  June 6, 1984

Decided:  August 30, 1984

Filed: AUG 30 1984

*Ethel M. Harrison*

———————————————————————————
                Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Wayne E. Sollie (Sollie) petitioned the Workers' Compensation Court to set aside, on the grounds of mutual mistake, a previous full and final compromise settlement entered into by Sollie and his employer's insurance company. After submission upon an agreed written record, the Workers' Compensation Court refused to set aside the compromise settlement. Sollie appeals this refusal. We affirm.

The issue is whether the Workers' Compensation Court erred in refusing to set aside the compromise settlement on the grounds of mutual mistake.

Sollie is a 66 year old married male residing in California. On August 11, 1976 Sollie was injured in an industrial accident while an employee of Peavey Company (Peavey), an employer whose carrier was Travelers Indemnity Company (Travelers). Sollie was injured while attempting to raise an overhead door at a grain elevator. As he raised the door, it suddenly reversed direction and dropped back upon him as a result of a broken cable. Sollie immediately felt pain in his lower back and was unable to straighten up. He was taken to the hospital emergency room and was hospitalized for approximately 2 weeks. In the latter part of September, Sollie returned to work but reinjured himself and was forced to stop working. He has not been employed since that time.

Sollie was treated by a physician in Glendive and was later referred to an orthopedic surgeon in Billings. By report dated June 1, 1977 that orthopedic surgeon determined that Sollie had a degenerative lumbar disc disease affecting various levels of the lumbar spine and a spondylolysis at the L-5 level. The orthopedic surgeon assigned Sollie a permanent partial impairment rating of 20% of the whole man.

2

Sollie continued to suffer pain and in October 1978 was examined by a Billings surgeon who suggested surgery to fuse the lumbar vertebrae. After seeking a second opinion, Sollie concluded that there was a chance the surgery would be unsuccessful and he elected not to undergo surgery.

Sollie was represented by an attorney different than his counsel on appeal. The trial attorney negotiated with Travelers over a period of time. Ultimately a compromise settlement was reached on April 18, 1979. Up to that date Sollie had received $13,198.39 in compensation benefits and $2,859.90 in medical benefits. Sollie executed a petition for full and final compromise settlement which listed the benefits received, stated that a controversy existed between Sollie and Travelers regarding the amount and duration of compensation, and agreed that a lump sum of $8,100 would be acceptable as a full and final compromise settlement, representing compensation for 100 weeks. Further medical and hospital benefits were expressly reserved by Sollie. Sollie petitioned the Division of Workers' Compensation, with the concurrence of Travelers, for approval of the petition. The petition was approved by the Division Administrator on June 4, 1979 and on June 12, 1979, the Workers' Compensation Court entered its order concurring in the full and final compromise settlement. The court found that this was a reasonable and fair settlement under the circumstances.

Dr. Nelson, a diplomat of the American Board of Neurology and Psychiatry, examined Sollie on March 9, 1983, nearly four years after the compromise settlement. In the proceedings on setting aside the compromise settlement, the medical reports of the original examining physicians were admitted in evidence and compared to the testimony of Dr. Nelson. In addition, the deposition of the trial attorney

3

who had represented Sollie was taken. After consideration of this evidence, the Workers' Compensation judge entered extensive findings of fact, conclusions of law and judgment. The court refused to set aside the compromise settlement and determined that Sollie was not entitled to further compensation benefits, costs or attorneys fees.

Did the Workers' Compensation Court err in refusing to set aside the compromise settlement on the grounds of mutual mistake? Sollie contends there was a mutual mistake by both Sollie and Travelers as to the nature and extent of his injury. He argues that this mistake affords a basis for setting aside the compromise settlement on the authority of Kienas v. Peterson (Mont. 1980), 624 P.2d 1, 37 St.Rep. 1747. Kienas involved a 32 year old man who suffered an injury to his lower back. He was examined by various doctors, including an orthopedic surgeon who found some problems with the lower lumbar region and ultimately found that Kienas had progressed as far as he could in healing. At that point the orthopedic surgeon estimated Kienas' impairment rating as 5%. In making that rating the orthopedic surgeon did not take into account Kienas' preexisting neurological condition, cerebral palsy. After negotiations in which Kienas was not represented by an attorney, a full and final compromise settlement for $4,040.54 was agreed upon. Kienas later asked to set aside the compromise settlement on the basis of later neurological examinations, which found that Kienas was totally disabled and that the accident could have aggravated his cerebral palsy and muscular condition. This Court noted that a totally disabled person would have been entitled to receive in excess of $115,000 in benefits. Kienas, 624 P.2d at 1-2, 37 St.Rep. at 1748-49.

4

The Court then stated:

"The full and final compromise settlement entered into by the parties is a contract. The law of contracts applies in construing and determining the validity and enforceability of the settlement agreement. The pertinent statutes provide:

". . .

"Section 28-2-409, MCA:

"Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

"(1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

(2) belief in the present existence of a thing material to the contract which does not exist. . ." 624 P.2d at 2-3, 37 St.Rep. at 1749-50 (Court's emphasis).

This Court then made the following comments regarding the element of mistake on the part of both parties:

"We find both parties were mistaken, and there is evidence of an unconscious ignorance of a fact that is material to the contract. Neither party at the time of entering the full and final compromise settlement knew of the exact nature or extent of the injury suffered by claimant. Neither party was aware of any possible disability caused by injury on the preexisting cerebral palsy condition . . .. It was not until the hearing to reopen the agreement that testimony from a neurologist indicated that the injury could have aggravated or accelerated the prior cerebral palsy." 624 P.2d at 3, 37 St.Rep. at 1750.

This Court then concluded that the settlement should be set aside and stated:

"The facts in this case are unique. The parties were laboring under a material mistake as to the nature of and the extent of claimant's injuries. The need to fairly compensate the injured worker is the intent and the purpose of the workers' compensation law. The full and final compromise settlement, therefore, must be set aside for a mutual mistake of a material fact as to the nature and the extent of the injury caused by claimant's accident. Claimant knew of the cerebral palsy; however, claimant, as well as respondent, did not know of the extent of the injury caused by the accident. There is ample evidence on the record for this Court to conclude that the injury sustained by claimant could have accelerated the

cerebral palsy." 624 P.2d at 3, 37 St.Rep. at 1750-51.

Sollie contends that Kienas is directly applicable here. Sollie suffered a compensable injury to the L-5 level of his spine. He argues that in diagnosing that condition, the treating orthopedic surgeon noted there was an underlying condition of intervertebral disease, but did not mention that the injury could have aggravated or compounded the underlying condition. He argues that based upon the medical evidence then available, all parties believed that Sollie's accident caused a "mechanical" injury which would soon heal and cause no further problem. Sollie contends that this mutual mistake misled the parties into the completion of the compromise settlement.

The Workers' Compensation Court disagrees with Sollie's analysis of the evidence. The court analyzed the medical evidence and quoted from the June 1, 1977 medical report of Dr. Frankel, which in part stated:

> "The patient has gotten along reasonably well since he was last seen. He has some days of recurring low back discomfort and other days he gets along very well. He is having some pain in his right knee and has some occasional discomfort in his left shoulder which I think are unrelated to his current back problem.
>
> ". . . I repeated his x-rays and the patient continues to show fairly wide spread degenerative intervertebral disc disease involving at least the lower three levels. In addition, he probably has a spondylolysis of the pars at L-5 visible particularly in the right oblique.
>
> "DISPOSITION: The patient was advised that the situation is permanent, although his symptom level may vary. He has mentioned the possibility of job training through Voc Rehab. I think this is highly desirable, simply because his current problem is that of degenerative lumbar disc disease and the nature of this condition is a permanent one.
>
> "With regard to impairment, the patient has multiple level degenerative intervertebral disc disease, with a spondylolysis at the L-5 level. This is compatible with a 20% permanent impairment of the whole man." (court's emphasis)

6

The Workers' Compensation Court noted that Dr. Nelson's findings in 1982 were consistent with Sollie's medical reports existing at the time of the compromise settlement. The court also noted that Dr. Nelson made a qualified estimate based on his examination in 1982 that Sollie had "about 20% whole body" impairment. The court found this to be consistent with the Frankel report of June 1, 1977.

The Workers' Compensation Court pointed out that at the time of the compromise settlement Sollie did not believe he was capable of working. The court quoted from Sollie's 1982 deposition testimony:

"Q.  (BY MR. SPEAR)  Mr. Sollie, is your back giving you as much trouble now as it was in April of 79?

"A.  There isn't much difference in it really.

"Q.  It's been pretty much the same all along?

"A.  Pretty much the same."

The court concluded that the claimant had testified that his back was in much the same condition in 1982 as it had been on the date of the compromise settlement. Accordingly, the court concluded that Sollie and Travelers were not laboring under a mutual mistake of fact material to their settlement contract when they entered into a full and final compromise settlement.

Comparing this case to Kienas, the court pointed out that Kienas and his insurer did not know when they entered their settlement agreement that the industrial accident possibly aggravated the preexisting cerebral palsy. The court reasoned that this constituted the mistake of fact which was the crucial element in the Kienas decision. The court applied this analysis to the present case and stated:

"The medical testimony and medical reports which are part of the record establish that the findings upon physical examination of the claimant are the

7

same now as they were at the time when Sollie agreed to fully and finally compromise his workers' compensation claim. Wayne Sollie was advised prior to his full and final compromise settlement that his medical condition was permanent, but that his symptom level might vary. The medical reports, which were in the possession of Wayne Sollie, clearly revealed the presence of multi-level intervertebral degenerative disc disease.

"Further, at the time the claimant agreed to compromise his claim, he had been unemployed for more than two years and in fact had applied unsuccessfully upon two occasions for social security benefits alleging total disability . . ..

"The testimony of claimant's attorney reveals that they were aware of their right to claim permanent total disability, but elected to compromise this workers' compensation claim because of the medical information available to them revealing partial impairment. . ..

". . .

"In the present case, claimant has failed to show anything but that the parties were fully aware of the physical problems of which the claimant complained, their cause, and claimant's prospects for finding employment in the normal labor market throughout the settlement negotiations. Therefore, the parties freely consented to the terms of this settlement agreement."

We have reviewed the depositions, transcript and other evidence submitted to the Workers' Compensation Court and conclude that there is substantial evidence to support the court's findings of fact and conclusions of law.

We hold that in the present case the parties were not laboring under a material mistake as to the nature of and the extent of Sollie's injuries and that there is no factual basis for Sollie's contention that there was a mutual mistake of fact at the time of the compromise settlement.

It is also important to consider section 39-71-204, MCA, which limits the power of the Workers' Compensation Court to amend a compromise settlement:

"Except as provided in 39-71-2908, the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation."

8

Section 39-71-2908, MCA allows the Workers' Compensation judge to disapprove an order allowing full and final compromise settlement within 10 days of the judge's receipt of an order. This Court has held in several cases that these statutes preclude reopening of Workers' Compensation settlements. See State ex rel. Montana Phosphate Products Co. v. Industrial Accident Board (1971), 156 Mont. 466, 481 P.2d 684; Elich v. Industrial Accident Board (1944), 116 Mont. 144, 154 P.2d 793; Williams v. Industrial Accident Board (1939), 109 Mont. 235, 97 P.2d 1115.

We affirm the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9