No. 86-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

DARRYL V. WELDELE,

        Claimant and Respondent,

-vs-

MEDLEY DEVELOPMENT, Employer,

    and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Appellant.

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Warden, Christiansen, Johnson & Berg; Stephen C Berg,
        Kalispell, Montana

    For Respondent:

        Trieweiler Law Firm; Michael C. Prezeau, Whitefish,
        Montana

Submitted on Briefs: Aug. 28, 1986

Decided: June 25, 1987

Filed:   JUN 2 5 1987

_Ethel M. Harrison_

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


The State Compensation Insurance Fund (State Fund) appeals a Workers' Compensation Court order setting aside the full and final compromise settlement of respondent Darryl Weldele's Workers' Compensation claim.

We affirm.

The dispositive issue on appeal is whether a mutual mistake of material fact, at the time the compromise settlement was entered into, prevented the parties from effectively consenting to the agreement. The Workers' Compensation Court found that there was and we agree.

In July, 1978, respondent suffered a work-related injury while working for Medley Development in Cascade County, Montana. The State Fund accepted liability for respondent's injury and paid temporary total disability benefits to him. At the time of the injury, respondent experienced pain from the base of his neck down to his wrist and across his right shoulder and shoulder blade. Several days after the injury, respondent went to a hospital emergency room where he was examined by Dr. George Schemm. Dr. Schemm tested respondent at that time and later testified by deposition that the results of the test were consistent with carpal tunnel syndrome, which is a compression of a nerve in the wrist. Dr. Schemm also testified that he considered thoracic outlet syndrome as an explanation for respondent's neck and arm pain but that he found no evidence of that problem at that time. Dr. Charles Jennings also examined respondent and found indications of carpal tunnel syndrome and rotator cuff syndrome, the latter being an inflammation of shoulder tendons. Dr. Jennings considered

2

the possibility that respondent had thoracic outlet syndrome, but rejected that diagnosis. In August, 1978, Dr. Schemm operated on respondent to relieve respondent's carpal tunnel syndrome.

In July, 1980, respondent, with counsel, petitioned the Workers' Compensation Division for a lump-sum payment of $14,000 as a full and final compromise settlement of his claim. At that time, respondent was still experiencing severe discomfort with his right arm. Respondent testified that both Dr. Jennings and Dr. Schemm assured him prior to his petition that the carpal tunnel syndrome had been treated fairly successfully and that his continuing problems with the rotator cuff syndrome would very probably dissipate over time.

The State Fund claims examiner approved a full and final compromise settlement of respondent's claim for $14,000. In August, 1980, the Workers' Compensation Division formally approved the settlement. At that time, the claims examiner believed respondent's injuries were a right rotator cuff tear, a healed carpal tunnel syndrome on the right side and some chronic pain.

Following the execution of the settlement agreement, respondent experienced increasing difficulties with pain and loss of feeling in his right shoulder and arm. Respondent saw a number of doctors in attempting to resolve his problems. Beginning in 1982, several doctors mentioned the possibility that respondent might be suffering from thoracic outlet syndrome. Generally, thoracic outlet syndrome is a compression of, or pressure on, certain nerves and/or arteries in the chest around the collarbone area which can have serious effects on the shoulders, arms and hands of the afflicted.

In 1982, Dr. Bonvallet diagnosed respondent as having symptoms of thoracic outlet syndrome on the right side. He performed an operation on respondent in November, 1982, to attempt to relieve the thoracic outlet syndrome. During the course of the operation, Dr. Bonvallet made objective findings consistent with that condition. He later testified that he thought that it was more probable than not that respondent's 1978 work injury was the cause of the thoracic outlet syndrome symptoms. Initially, the operation was very successful in relieving respondent's discomfort. Within two months, however, respondent's symptoms had returned almost to the same degree. In October, 1983, respondent quit his job on the advice of his doctors and because of worsening symptoms. He has not been employed since then.

In January, 1985, Dr. Oreskovich diagnosed respondent as suffering from thoracic outlet syndrome on the left side. He testified by deposition that he thought respondent developed thoracic outlet syndrome because of the 1978 work-related injury. He stated that he knew that within a reasonable degree of medical certainty. Dr. Oreskovich also stated that thoracic outlet syndrome is difficult to diagnose. Dr. Bonvallet agreed with Dr. Oreskovich on this point and added that, in his experience, patients suffering from thoracic outlet syndrome are commonly misdiagnosed for three or four years. In June, 1985, Dr. Oreskovich operated on respondent and performed a first rib resection on the left side in an attempt to relieve the thoracic outlet syndrome. During the operation, this doctor also made objective findings confirming his diagnosis of thoracic outlet syndrome.

In May, 1985, respondent requested his case be reopened on the grounds that it had been settled due to a mutual mistake of a material fact. The allegedly mistaken fact was

the nature, and extent, of respondent's medical condition. The State Fund declined to reopen the case. The court held a hearing on respondent's petition in October, 1985, and in January, 1986, the court issued its decision.

The court found that at the time of the settlement agreement both the respondent and the State Fund's claims examiner, believed that respondent's injuries were limited to a healed carpal tunnel syndrome and a rotator cuff problem. The court also found that respondent is suffering from thoracic outlet syndrome, which condition resulted from respondent's 1978 work injury. The court ruled that both parties were operating under a mutual mistake of material fact in entering the settlement agreement. Therefore, the court held that respondent was entitled to reopen the settlement.

Generally, § 39-71-204, MCA, limits the power of the Workers' Compensation Court to amend a compromise settlement:

> Except as provided in 39-71-2908, the division of the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation.

Section 39-71-204(2), MCA.

Under § 39-71-2908, MCA, the Workers' Compensation judge may, within ten days of the judge's receipt of the order, disapprove an order allowing a full and final compromise settlement. "This Court has held in several cases that these statutes preclude reopening of [sic] Workers' Compensation settlements." Sollie v. Peavey Co. and Travelers Indemnity Co. (Mont. 1984), 686 P.2d 920, 41 St.Rep. 1684.

However, in Kienas v. Peterson (Mont. 1980), 624 P.2d 1, 37 St.Rep. 1747, opinion on rehearing, 38 St.Rep. 320,

5

this Court established that under ordinary contract law a full and final compromise settlement could be set aside if the parties to the agreement were operating under a mutual mistake of material fact. We said "a universally accepted tenet of contract law, statutory in our state, that consent to the contract is lacking if it is entered into through mutual mistake of a material fact by the parties." Kienas, 38 St.Rep. at 321. It is well settled that if there is no consent, there is no contract. Section 28-2-409, MCA, states that:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
>
> (1) an unconscious ignorance or forgetfulness of fact, past or present, material to the contract; or
>
> (2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

In Kienas, we allowed the claimant to reopen his full and final compromise settlement because neither party to the agreement realized that Kienas' work-related injury could have aggravated or accelerated his prior condition of cerebral palsy.

Here, the Workers' Compensation Court found there was a mutual mistake of fact. From the record before us we find there is more than sufficient evidence to support the finding by the lower court of mutual mistake by the parties. This case is similar to Kienas on that issue and we find that case to be controlling. Claimant Weldele and the appellant were mistaken as to the thoracic outlet syndrome. All doctors interviewed in this case testified that thoracic outlet

syndrome is very difficult to diagnose. One specialist stated the syndrome is frequently misdiagnosed for three or four years. The doctors who treated the claimant for this syndrome believed the syndrome was caused by his 1978 accident. This syndrome is uniquely difficult to diagnose. The evidence shows an unconscious ignorance of a material fact on the part of both parties upon which the final settlement was based.

The need to fairly compensate the injured worker is the intent and the purpose of the Workers' Compensation law. Kienas v. Peterson (Mont. 1980), 624 P.2d 1, 3, 37 St.Rep. 1751. We find the final compromise settlement was correctly set aside by the Workers' Compensation Court.

We affirm the decision of the Workers' Compensation Court.

_____
                    Justice

We Concur:


_____
        Chief Justice


_____

_____

_____
           Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

In my view, the Kienas decision, which the majority found to be controlling, should not be used as authority in this case. In Kienas, the claimant, who was not represented by counsel, entered into a full and final compromise settlement for a payment of $4,040, where the claim involved potential payments in excess of $115,000. The Workers' Compensation Court refused to set aside the settlement, and on appeal, this Court, finding the case to be unique, applied contract law and reversed and remanded, without discussing § 39-71-204, and § 39-71-2909, MCA, which limits the power of the Workers' Compensation Court to rescind, alter, or amend an order approving a final compromise settlement. Upon rehearing Kienas, this Court considered § 39-71-204, MCA and § 39-71-2909, MCA, stating the following:

> Petitioner argues that the Workers' Compensation Court had no power to alter or rescind a full and final compromise settlement agreement four years after the parties had executed the same. Section 39-71-204, MCA. However, in Kienas, the Workers' Compensation Court did not set aside the agreement. This Court set aside the agreement. Our appellate power is not limited to section 39-71-204 nor 39-71-2909, MCA. See section 3-2-204, MCA. (Emphasis added.)

Kienas, 37 St.Rep. at 321.

In this case, the claimant was represented by a highly qualified, experienced attorney who presented the petition for full and final compromise settlement in July 1980, and obtained approval in August 1980. The request to reopen was not made until May 1985, more than four years after the order approving final compromise settlement.

8

The Workers' Compensation Court was created by the legislature and can only act within the jurisdictional limits established by the legislature. The majority here has, in my opinion, extended the _Kienas_ doctrine by ignoring the jurisdictional limits of § 39-71-2909, MCA, and this Court's opinion on rehearing _Kienas_.

As an additional basis for dissent, I note that § 28-2-409, MCA, requires an unconscious ignorance of a _past_ or _present_ fact, material to the contract.

For application of that section I quote the following:

> The courts have frequently stated, as a general principle of the law of mistake, that in order to support a claim for relief the mistake relied upon must have been as to a past or existing fact, and that _future developments_ are matters of opinion only and mistakes as to such matters cannot be the basis for relief from a contract.
>
> This principle has frequently been invoked in cases where an attempt was made to avoid a release allegedly executed under a mutual mistake as to the nature and extent of the releasor's injuries, the claim usually being made that the mistake was only as to the prognosis of known injuries, and so related only to opinion. This requirement that the mistake must have been as to an existing fact has also given rise in several jurisdictions to a rule that the mistake must have been as to an existing but unknown injury, and that no relief will be afforded because of a mistake as to the consequences or _developments_ of an injury known to have _existed at_ the time the release was executed. (Emphasis added.)

Annot., 71 A.L.R.2d 82, 100 (1960).

9

In my opinion, this case should be reversed on the basis of Sollie v. Peavey Co. (Mont. 1984), 686 P.2d 920, 41 St.Rep. 1684.

_____
Justice

Mr. Chief Justice J. A. Turnage, dissenting:

I concur in the foregoing dissent of Mr. Justice Gulbrandson.

_____
Chief Justice