MR. JUSTICE WEBER
delivered the Opinion of the Court.
Claimant Mr. Kimes received disability benefits for a work-related injury to his knee until he entered a settlement agreement with the insurer, Pacific Employers Insurance Company (Pacific). Pacific appeals the ruling of the Workers’ Compensation Court which set aside the settlement. Mr. Kimes cross appeals the discontinuation of his temporary total disability benefits. We affirm.
The issues are:
1. Did the lower court err in setting aside the full and final settlement agreement on the grounds of mutual mistake of fact?
2. Did the lower court err by failing to continue temporary total disability benefits beyond August 20, 1986?
Mr. Kimes injured his knee in 1983 when he fell down steps during his employment as a cook for Charlie’s Family Dining and Donut Shop. The employer accepted liability for benefits and paid compensation to Mr. Kimes. An orthopedic physician repaired a ruptured cruciate ligament in the knee, after which he assigned Mr. Kimes a 30 percent impairment rating to his left knee and leg. The physician felt, however, that Mr. Kimes should be able to return to work as a cook. In January 1985, the parties entered a full and final settlement agreement for a $14,500 lump sum.
In November 1985, Mr. Kimes returned to see his physician because of continuing problems with his left knee. The physician referred Mr. Kimes to a second doctor, who suggested that Mr. *177 Kimes’s problems could be due to a tear of the medial meniscus, which is a cartilage in the knee. Surgery was performed, a tear was found, and the meniscus was removed. The first physician has testified by deposition that X-rays show that the tear in the meniscus was present before the settlement was reached, but that he simply did not detect it.
Mr. Kimes petitioned the Workers’ Compensation Court to reopen his case based on a mutual mistake of medical fact. The court held a hearing at which Mr. Kimes and the attorneys for both sides presented testimony. The depositions taken of the physician both before and after the settlement were also available to the court. The court set aside the settlement agreement and ruled that the employer is entitled to a credit for the settlement amount.
I
Did the lower court err in setting aside the full and final settlement agreement on the grounds of mutual mistake of fact?
As this Court discussed in Kienas v. Peterson (Mont. 1980), [191 Mont. 325,] 624 P.2d 1, 37 St.Rep. 1747, general contract law gives courts the right to reopen a compromise settlement when there has been a non-negligent mutual mistake of material fact. In Kienas, the claimant suffered an injury to his back. After a full and final settlement was made, doctors concluded that the injury had also aggravated claimant’s previous condition of cerebral palsy, rendering him totally disabled. Ruling that there was a mutual mistake of material fact, this Court set aside the settlement agreement.
In Weldele v. Medley Development (Mont. 1987), [227 Mont. 257,] 738 P.2d 1281, 44 St.Rep. 1062, the claimant had suffered an industrial shoulder injury. At the time full and final settlement was made, the injury had been diagnosed as a rotator cuff tear and a healed carpal tunnel syndrome. After the settlement, the claimant was diagnosed as having thoracic outlet syndrome in the shoulder. The physician testified that it was more probable than not that the claimant’s work-related injury was the cause. This Court affirmed the lower court’s conclusion that those circumstances constituted a mistake of fact upon which the settlement could be reopened.
In contrast, where findings in medical reports following a settlement are consistent with those prior to the settlement, where the impairment rating is substantially unchanged, and where the claimant is in much the same condition as at the time of settlement, there *178 is no mutual mistake of fact justifying reopening a settlement. Sollie v. Peavey Co. (Mont. 1984), [212 Mont. 197,] 686 P.2d 920, 41 St.Rep. 1684. Variance in the symptom level, where claimant knew this level would vary, is not enough. Sollie, 686 P.2d at 924.
Pacific argues that there was no mutual mistake of fact here. It asserts that Mr. Kimes and his attorney were aware at the time of the settlement that there were potentially permanent problems with the knee and that those problems were related to Mr. Kimes’s industrial accident. However, not only has Mr. Kimes’s disability rating increased as a result of the post-settlement surgery to remove the torn meniscus, but his prognosis now includes probable degenerative changes in his knee joint. He now requires pain medication and has been advised not to return to his former line of work as a cook. The X-rays show that Mr. Kimes had a tear in his medial meniscus at the time of settlement, and it is undisputed that this was unknown to the parties when settlement was made.
While the dissent argues that the Workers’ Compensation Court does not have statutory authority to set aside this full and final compromise agreement, the parties did not raise that argument. Further, this Court is not so limited where there has been mutual mistake. We conclude that the uncontradicted medical evidence establishes a material mistake of fact relating to both the nature and extent of Mr. Kimes’s injury. We hold that the full and final settlement entered in this case may be reopened on the basis of this material mistake of fact.
II
Did the lower court err by failing to continue temporary total disability benefits beyond August 20, 1986?
The Workers’ Compensation Court terminated Mr. Kimes’s temporary total disability benefits as of the date the physician, by deposition, stated that Mr. Kimes had reached his maximum medical recovery. Mr. Kimes argues that he is entitled to an award of continued temporary total disability benefits until he reaches a point at which he can return to the job market.
Under the statutory scheme in effect at the time of Mr. Kimes’s injury, temporary total disability did not exist past the time of maximum healing. Section 39-71-116(19), MCA (1983), provided:
“ ‘Temporary total disability’ means a condition resulting from an injury as defined in this chapter that results in total loss of wages *179 and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence. [Emphasis supplied.]”
The physician testified on August 20, 1986, that Mr. Kimes had reached maximum healing. We conclude that the lower court was correct in terminating temporary total disability benefits as of August 20, 1986. This does not in any way constitute a ruling on Mr. Kimes’s right to permanent total or permanent partial disability benefits.
Affirmed as to the result reached.
MR. JUSTICES HARRISON, SHEEHY, McDONOUGH and HUNT concur.