MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
In my view the Workers’ Compensation Court erred procedurally and substantively in setting aside the full and final settlement.
The majority in this case, as in Weldele v. Medley Development (Mont. 1987), [227 Mont. 257,] 738 P.2d 1281, 44 St.Rep. 1062, has tacitly approved the unauthorized practice, by the Workers’ Compensation Judge, of setting aside full and final settlements when the legislature has expressly removed such authority from the Workers’ Compensation Court.
Section 39-71-204(2), (1985) MCA, applicable to this case, includes the following:
“[E]xcept as provided in 39-71-2908, the division or the workers’ compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation.” (Emphasis added.)
Section 39-71-2908, (1985) MCA, states:
“All orders allowing full and final compromise settlements of workers’ compensation claims shall be immediately, referred to the workers’ compensation judge, and the judge may, within 10 days of the judge’s receipt of an order, disapprove an order allowing a full and final compromise settlement.”
In addition, Section 39-71-2909, (1985) MCA, provides:
“The judge may, upon the petition of a claimant or an insurer that the disability of the claimant has changed, review, diminish, or increase . . . any benefits previously awarded by the judge or benefits received by a claimant through settlement agreements. However, the *180 judge may not change any final settlement agreement or award of compensation more than 4 years after the settlement has been approved by the division or any order approving a full and final compromise settlement of compensation.” (Emphasis added.)
Here the Division entered its order approving full and final compromise settlement on February 7, 1985 and said order was then referred to the Workers’ Compensation Judge, pursuant to Section 39-71-2908, (1985) MCA, who reviewed the file, approved the order, and closed the claimant’s file. After that point, in my view, the Workers’ Compensation Court was without authority to set aside the settlement agreement. A review of Kienas, relied upon by the majority, is necessary to explain my view. In Kienas, the claimant, who was not represented by counsel, entered into a full and final compromise settlement for a payment of $4,040, where the claim involved potential payments in excess of $115,000. The Workers’ Compensation Court refused to set aside the settlement, and on appeal, this Court, finding the case to be unique, applied contract law and reversed and remanded, without discussing Section 39-71-204, (1985) MCA and Section 39-71-2909, (1985) MCA, which limits the power of the Workers’ Compensation Court to rescind, alter, or amend an order approving a final compromise settlement. Upon rehearing Kienas, this Court considered Section 39-71-204, (1985) MCA and Section 39-71-2909, (1985) MCA, stating the following:
“Petitioner argues that the Workers’ Compensation Court had no power to alter or rescind a full and final compromise settlement agreement four years after the parties had executed the same. Section 39-71-204, MCA. However, in Kienas, the Workers’ Compensation Court did not set aside the agreement. This Court set aside the agreement. Our appellate power is not limited to section 39-71-204 nor 39-71-2909, MCA. See Section 3-2-204, MCA.
“It is a universally accepted tenet of contract law, statutory in our state, that consent to the contract is lacking if it is entered into through mutual mistake or a material fact by the parties. We found such a mutual mistake in the compromise settlement agreement in this case. In applying ordinary contract law to reach our result, we are not unduly broadening the possibilities of reopening workers’ compensation settlements. We are simply finding here that a contract to settle did not exist in the first place.” (Emphasis added.) Kienas v. Peterson, Opinion on Rehearing (Mont. 1981), 38 St.Rep. 320, 321.
In addition to the lack of authority by the Workers’ Compensation *181 Judge to set aside the settlement agreement, I have a second problem with the majority opinion. If the majority is “simply finding here that a contract to settle did not exist in the first place” (see Kienas quote above) then, in my opinion, it can only do so by ignoring the pre-injury and post-injury medical history, in addition to the expressed intent of the parties as set forth in the settlement agreement. The medical history indicates that claimant’s anterior cruciate ligament was torn in 1979 when, as a pedestrian, he was struck by an automobile and that such pre-existing problem led to the industrial injury, and that following surgery the cruciate ligament was better than it had been prior to the first slip and fall at work, and that after reaching a medically stable condition, the claimant, on the first day he was returning to work, injured the knee in a non-industrial motorcycle accident. The medical record is clear that the only permanent injury sustained by claimant was confined to the lower left extremity and Section 39-71-705, (1985) MCA, limits permanent partial disability payments for such an injury to 200 weeks. Here, the defendant’s payments were the equivalent of 215.96 weeks of benefits. These factors, in my opinion, indicate that the claimant, and his attorney, were fully cognizant of the material facts when they both signed claimant’s petition, prepared by his counsel, which petition reads as follows:
“The undersigned claimant was accidentally injured on June 16, 1983, while employed by Charlie’s Family Dining & Donut Shop, an employer enrolled under Compensation Plan No. II of the Montana Workers’ Compensation Act. The claim was filed and accepted by the insurer for the payment of any compensation and medical benefits due.
“The total compensation paid to date is $16,408.00.
“The total medical and hospital benefits paid to date are $5,250.00.
“A controversy exists between this claimant and insurer over the amount and duration of compensation. This controversy has been resolved by an agreement between the claimant and the insurer wherein the claimant agrees to accept the sum of Fourteen Thousand Five Hundred ($14,500.00) Dollars in a lump sum in a full and final compromise settlement, which represents compensation for 129+ weeks. Further medical and hospital benefits are expressly hereby reserved by the claimant unless otherwise indicated in this petition. This settlement includes attorney fees.
“The claim [sic] hereby petitions the Division of Workers’ Compensation, with the concurrence of the above named insurer, for ap *182 proval of this petition and that the case be fully and finally closed on the basis set forth above. The claimant understands that by entering into a full and final compromise settlement, both the named insurer and the claimant agree to assume the risk that the condition of the claimant, as indicated by reasonable investigation to date, may be other than it appears, or it may change in the future. The claimant further understands that another settlement option is available to him which would allow the settlement to be reconsidered within a four-year period, but finds that closing the settlement finally at this time is in his best interest. The claimant understands that if this petition is approved, the claim is forever closed and can never again be reopened.” (Emphasis added.)
DATED this 15 day of January, 1985.
(signed) Robert Kimes
Robert Kimes, Claimant
2131 9th Avenue
Helena, Montana 59601
WITNESS:
(signed) John C. Doubek
The Defendant hereby concurs and joins in the foregoing petition for full and final compromise settlement.
DATED this 28 day of January, 1985.
(signed) Andrew J. Utick
Authorized Representative its Attorney
It is obvious that the language used was in direct response to the Kienas decision, and was drafted by counsel for claimant to meet the defendant’s requirements and to avoid the possibility of the agreement being set aside. It appears that the English language does not contain words adequate to draft a legally enforceable “full and final compromise settlement.”
I would reverse.
MR. CHIEF JUSTICE TURNAGE joins in the foregoing dissent of MR. JUSTICE GULBRANDSON.