No. 88-425

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

WILLIAM WHITCHER,

        Claimant and Appellant,

   -vs-

WINTER HARDWARE COMPANY,

         Employer,
    and
PACIFIC EMPLOYERS INSURANCE CO.,

        Defendant and Respondent.

'89 FEB 23 AM 9 49

ED SMITH, CLERK
MONTANA SUPREME COURT

FILED

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
             Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lloyd E. Hartford, Billings, Montana

    For Respondent:

        Michael P. Heringer, Billings, Montana

Submitted on Briefs: Jan. 5, 1989

Decided: February 23, 1989

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The claimant, Mr. Whitcher, filed a petition with the Workers' Compensation Court to reopen his Full and Final Compromise Settlement, to have medical benefits paid, and to receive vocational rehabilitation. The court denied the request to reopen the settlement agreement, but ordered that claimant is entitled to medical benefits, a 20% penalty on those medical benefits, rehabilitation, and costs and attorney fees on the prevailing issues. Mr. Whitcher appeals that portion of the court's decision denying him the opportunity to reopen his full and final compromise settlement. We affirm.

The issue is whether the Workers' Compensation Court erred in refusing to allow the claimant to reopen his full and final compromise settlement based on the grounds of mutual mistake.

On December 18, 1978, William Whitcher suffered an industrial accident arising out of and in the course of his employment with Winter Hardware in Billings, Montana. Mr. Whitcher was employed as a laborer for the hardware wholesaler, and hurt his back while attempting to move some angle iron. Although injured, he continued to work for the employer until January 12, 1979 before seeking medical treatment.

Mr. Whitcher filed a timely claim for compensation and Pacific Employers Insurance, who insured Winter Hardware, duly accepted liability and paid biweekly benefits and medical expenses as incurred. Mr. Whitcher's temporary total weekly benefits were $95.53 and his permanent partial disability rate was $94.00 per week. He received the following lump sum advances during 1979, which were to be credited against his right to future permanent partial disability payments:

2

1. October 1, 1979 - $750.00
2. November 5, 1979 - $500.00
3. November 21, 1979 - $1000.00

At his employer's insistence, Mr. Whitcher sought medical treatment on January 9, 1979, due to pain in his lower back which radiated into his lower extremities. On March 15, 1979, he underwent back surgery in an attempt to alleviate the pain.

Seven months after surgery, the orthopedic surgeon who performed the surgery gave Mr. Whitcher an estimated impairment rating of 20% whole body permanent physical impairment and loss of function. That 20% impairment rating was confirmed by the doctor again on March 13, 1980, one year after surgery. On March 20, 1980, Mr. Whitcher signed a Petition for Full and Final Compromise Settlement in the amount of $8,000.00. Initially, the proposed settlement offer of $8,000.00 was rejected by Levi Loss of the Compliance Bureau. However, Mr. Loss suggested to the claims adjuster that the the Bureau would approve the settlement if an additional payment of 26 weeks of benefits at the claimant's temporary total rate, or $2,483.78, was added to the original $8,000.00 settlement figure. The Workers Compensation Court found that Mr. Loss was aware of Mr. Whitcher's 20% impairment rating which would have entitled him to 100 weeks of benefits at the rate of $94.00 or some $9,400.00.

Eventually, the claims adjuster agreed to amend the petition to include the additional payments. The settlement was processed and approved by the appropriate authorities in April 1980. Mr. Whitcher continued to receive benefits through September 11, 1980. Thereafter, he was notified by letter dated September 22, 1980 that he would no longer receive benefits pursuant to the compromise settlement agreement.

On January 27, 1987, Mr. Whitcher filed a petition with the Workers' Compensation Court to reopen the 1980 settlement. The court denied Mr. Whitcher's request based on his failure to comply with the applicable statute of limitations. On appeal, Mr. Whitcher argues that he is entitled to reopen his settlement based on the mutual mistake of the parties in settling his claim, and does not address the applicability of the statute of limitations. For purposes of our review, we will first discuss the court's findings as they relate to Mr. Whitcher's claim of mutual mistake and then we will review the court's decision on the applicability of the statute of limitations.

This Court has allowed the recission of a full and final settlement agreement based on a mutual mistake of fact in Kienas v. Peterson (Mont. 1980), 624 P.2d 1, 37 St.Rep. 1747. A mistake of fact is defined by statute as follows:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
> (1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract, or
> (2) belief in the present existence of a thing material to the contract which does not exist or in the past experience of such a thing which has not existed.

Section 28-2-409, MCA.

Mr. Whitcher contends that there are three separate bases for a finding of mutual mistake which justify a setting aside of the settlement agreement and that therefore, it was error for the Workers' Compensation Court to deny a reopening of the case. These accounts of mutual mistake relate to (1) the parties' understanding of the settlement agreement; (2) the condition of the claimant's back at the time of the

4

settlement; and (3) the claimant's psychological condition at the time of the settlement.

## The Settlement Agreement

First, Mr. Whitcher argues that because he was unable to understand the agreement, there was no meeting of the minds as to what was being settled and that this constitutes mutual mistake. He contends that he thought the lump sum amount of $8,000.00 was analogous to his previous lump sum distributions in that he would continue to receive benefits. While it is not clear how the insurer was in "unconscious ignorance" as to the meaning of the contract terms, we assume that Mr. Whitcher is charging the insurer with knowledge of his own ignorance regarding the meaning and effect of the full and final settlement.

A clinical psychologist testified by deposition regarding the claimant's ability to read and understand the settlement agreement. The psychologist had performed various tests on the claimant in 1980 at the request of Vocational Rehabilitative Services to determine Mr. Whitcher's vocational skills and interests. Those tests revealed that in 1980, Mr. Whitcher had an IQ which was just below average intelligence and that his reading ability was at the 8th grade level. When asked whether the claimant would be able to comprehend the Petition for Full and Final Settlement, the psychologist responded:

    A:    I think that he would be able to comprehend it
          with perhaps some concepts explained to him.
          But basically most of the wording is at a
          level which he could comprehend.
    Q:    What would you feel would need to be explained
          to him?
    A:    Oh, such words I think as duration, he might
          not be able to understand the meaning of that
          term without some---just be able to pronounce
          it and understand it.   There's just a matter

5

of some single words and so forth. Concurrence. These are some more difficult words to read. And they're not in a typical type of vocabulary of people at Mr. Whitcher's level.

However, I think that if there was some discussion along with this, he can understand the figures and terms of the amount of money involved. The fact that this is a lump sum payment, and that he's due some additional benefits, I think that would be fairly understandable to him.

Levi Loss, the assistant bureau chief with the Workers' Compensation Division at the time of the settlement, stated that he would not approve a settlement if he thought a claimant did not understand it. Although Mr. Loss initially rejected the $8,000.00 settlement offer, he later approved it upon the addition of 26 weeks of benefits. When testifying about Mr. Whitcher's understanding of the finality of the settlement agreement, Mr. Loss stated:

I believe at the time that he understood it. I think that he must have been in a position to where that was ---
Somehow or another, it didn't seem to be that important to him. He just wanted his money, and it was more important to get it, although he was aware that it could have some gravity; and if they ask for it and insist on it, it gets to the point where if the adjuster and them, if that's what they work out, I can't tell too many people just how far to go, if they insist.

The adjustor who handled the claim testified that he had no reason to doubt Mr. Whitcher's ability to understand that $8,000.00 was the maximum he was going to get. The evidence indicates that the adjustor had explained both verbally and in writing that after receiving the $8,000.00, the claimant would be closing his right to compensation forever.

The Workers' Compensation Court found that Mr. Whitcher was capable of understanding the terms of the settlement agreement. We hold that the above testimony substantially supports that finding so that the claim of mutual mistake as to what was being settled is without merit.

In connection with that argument, Mr. Whitcher contends that the modification of the settlement agreement to include 26 weeks of additional payments without his knowledge or consent constitutes mutual mistake since there was no meeting of the minds as to those provisions. No relevant findings were made by the Workers' Compensation Court, and we are reluctant to serve as factfinders as to this issue. However, we fail to see why Mr. Whitcher would not have agreed to the additional terms of the settlement since they were in his economic interest.

Next, Mr. Whitcher contends that the parties were mutually mistaken in their understanding of the nature and extent of his back condition and how the injury may have aggravated the claimant's pre-existing psychological impairments. The Workers' Compensation Court made no specific findings relating to the issue of mutual mistake and the claimant's mental or physical condition, and as a reviewing court, we will not make our own findings of fact in this regard. However, given our concern for this claimant whose impairment is serious and who was not represented by legal counsel at the time he entered into the settlement agreement, we will briefly examine the record to determine if there is any evidence which might justify further inquiry into these contentions.

The Back Injury

This Court has been reluctant to reopen a Petition for Full and Final Settlement based on mutual mistake surrounding the injury except in a small number of situations. In Kimes v. Charlie's Family Dining & Donut Shop (Mont. 1988), 759

7

P.2d 986, 45 St.Rep. 1402, this Court allowed an injured worker to reopen his petition where a new and different medical problem was discovered after the settlement. In Weldele v. Medley Development (Mont. 1987), 738 P.2d 1281, 44 St.Rep. 1062, we allowed a reopening of the petition where the claimant's initial condition deteriorated substantially and the treating physician's initial assessment was a misdiagnosis of the actual extent of the injury.

There is no evidence in the record indicating that Mr. Whitcher's back condition was originally misdiagnosed and that it subsequently worsened beyond the scope of the initial diagnosis. Nor is there evidence indicating that any new or different medical problem was diagnosed after the settlement. While we are sympathetic to the claimant's purported increased levels of pain, we find nothing in the record to indicate that the present state of his injury is any different than at the time of settlement. The orthopedic surgeon who gave the claimant a 20% whole body impairment rating in 1980 testified again in 1987 that, in his opinion, the impairment rating had not changed during that time. Also, in April of 1982 a myelogram was administered which revealed "an area where there was pressure which did not look significantly different from the time of the myelogram at the time of his first surgery (in 1980)."

The claimant's testimony indicates that he has suffered extreme and often debilitating pain ever since the injury, which appears to have gotten worse over the years. We note that during this time, Mr. Whitcher has been employed in jobs requiring heavy lifting, bending, and long periods of standing, which was discouraged by his physician. Together with the lack of medical testimony justifying a reopening of the case, we conclude that while Mr. Whitcher may indeed be experiencing an increased level of pain, there is nothing to

8

indicate the parties were mutually mistaken about the condition of his back at the time of the settlement.

## The Psychological Condition

Mr. Whitcher also contends that the parties were mutually mistaken about certain diagnosed personality disorders, which he claims did not become "active" until after the injury and the settlement. This Court has found mutual mistake where a claimant's lower back injury was later determined to have aggravated a pre-existing condition of cerebral palsy which the parties did not take into account at the time of the impairment rating and settlement agreement. Kienas v. Peterson, 624 P.2d at 3. However, there is no evidence here which would support a similar conclusion. While it is clear that Mr. Whitcher suffered a number of psychological impairments, there is no evidence to connect those impairments to the back injury. The psychologist's report indicates that Mr. Whitcher suffered a chronic personality disorder, which he described as:

> ". . . (a) generally inadequate adjustment over a number of years, probably first appearing as a teenager, or maybe even a little earlier than that, inadequately adjusting to school, dropping out, not finding any consistent satisfactory type of work, having some family, marital problems."

The evidence indicates that this described "condition" persisted following the claimant's injury. However, there is no evidence that it was the claimant's personality disorder which was the source of his frustration so much as it was just an unfortunate series of events which occurred following the injury.

Mr. Whitcher was examined again in 1982 by a different clinical psychologist who also identified several personality disorders, one of which he characterized as a "schizoid"

9

tendency. When asked about the relationship between the claimant's schizoid behavior and his back condition, the psychologist testified:

> " . . . I think that in this instance, that he is apt to show rather inconsistent behavior with regard to his back problem. It is going to bother him maybe sometimes a bit more; sometimes he is going to ignore it. He is going to take a very obtuse attitude, he might, I don't know; like nothing is wrong with me. I am going to go ahead and work. I am not going to lie, I am not going to tell anybody; it will be some irratic behavior about the way he treats his back. I don't think the back injury is going to make the schizoid personality disorder worse, it is not going to make it worse, it is just going from this way to this way."

Our examination of the record leads us to conclude that even if the parties did not take into account the existence of the claimant's personality disorder at the time of the settlement, there is no basis upon which to find a mutual mistake of fact. The evidence does not indicate that the personality disorder was aggravated by the injury or that there was any connection between the injury and the disorder.

Even if we had found some basis upon which to consider this case on the merits, the Workers' Compensation Court concluded that Mr. Whitcher's claim is barred by the statute of limitations so that his request to reopen the petition should be denied. In declining to reopen Mr. Whitcher's settlement agreement based on the grounds of mutual mistake, the Workers' Compensation Court applied the following statute of limitations:

> The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until

the discovery by the aggrieved party of the facts constituting the fraud or mistake.

Section 27-2-203, MCA.

Since the settlement was completed and approved by the proper authorities in April of 1980, the court concluded that under the statute, Mr. Whitcher had until April of 1982 to file his claim. Since it did not appear that he was seeking medical care during that time until he returned to see his doctor in April, 1982, the court noted that the statute may not have begun to run until that time. Based on medical facts and Mr. Whitcher's debilitating condition in 1982, the court concluded that the limitation period would have expired by at least the fall of 1984. Thus, the claim filed in 1987 was barred by the two year statute of limitations in either case.

Finally, the court noted that the only possibility of not being precluded by the statute of limitations from bringing this claim would be if Mr. Whitcher's mental capacity was such as to make him unable to knowingly be charged with the statute. Since this possibility was neither raised or pursued by the claimant, the court did not consider it as an issue and stated, "Unfortunately, the harsh reality of his claim under the circumstances gives the Court no alternative but to deny his request."

We conclude that the determination by the Workers' Compensation Court that Mr. Whitcher's claim is barred by the statute of limitations is a correct application of the law in light of the facts of this case. There is no evidence that the statute should be tolled either by latent discovery or by the claimant's mental condition. We affirm the court's denial of the claimant's request to open the Petition for Full and Final Compromise Settlement.

11

We note the Workers' Compensation Court's concern for Mr. Whitcher's mental, physical, and emotional condition, and the benefits to which the court deemed him entitled. These benefits include medical coverage, a 20% penalty against the insurer, rehabilitation, and costs and attorney fees for the medical benefits issue upon which he prevailed.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice William E. Hunt, Sr., and Mr. Justice R. C. McDonough did not participate in this cause.

Mr. Justice John C. Sheehy, dissenting:


This worker's right to compensation payments should be reinstated on the law and on the facts.

When Mr. Wood, representing Pacific Employer Insurance, offered an $8,000 settlement, on March 20, 1980, Whitcher had a whole body permanent physical impairment of 20 percent recognized by his doctor. The petition which Wood prepared and had Whitcher sign for $8,000 represented the payments that Whitcher would receive at $94 a week for 1.64 years. The people then handling claims for the Workers' Compensation Division recognized the proposal as unconscionable. Without contacting Whitcher, the Workers' Compensation Division negotiated with Wood for an additional 26 weeks of compensation. Whitcher never was consulted by either Wood or the Division as to whether Whitcher would consent to the increase. The necessity for the increase would have impressed upon Whitcher, perhaps, that his dealings with Wood were not on all fours with propriety. Thus, we have a full and final settlement to which Whitcher never consented. As the opinion notes, the Workers' Compensation Court made no relevant findings as to this point. Nonetheless, the majority airily dismisses the lack of Whitcher's consent saying, "We fail to see why Mr. Whitcher would not have agreed to the additional terms of the settlement since they were in his economic interest." Thus does the majority supply the missing element of consent to the agreement in this case. The majority does not attempt to explain how an agreement so detrimental to the interests of Whitcher are in his "economic interest."

In Kienas v. Peterson (1980), 624 P.2d 1, 37 St.Rep. 1747 (Harrison, J.) this Court set aside a full and final

13

compromise agreement before the Workers' Compensation Court on the ground of mutual mistake. Section 28-2-1611, MCA, permits a contract to be revised by the court when through fraud or mutual mistake a written contract does not truly express the intention of the parties. It was on that basis that Kienas was decided. However, § 28-16-1611, MCA, also permits the revision of a contract when there is a mistake of one party which the other party at the time knew or suspected. The evidence here shows that Whitcher's consent to the $8,000 settlement was a mistake. If Pacific did not know it was a mistake at the time, it soon found out when the proposal was submitted to the Workers' Compensation Division. The subsequent amendment of the proposal for settlement executed between Wood and the Division without the knowledge or consent of Whitcher constituted no contract as far as Whitcher is concerned and there should be no problem about reopening his case before the Workers' Compensation Court under § 28-16-1611, MCA.

Section 27-2-203, MCA, provides that the two year statute of limitations for reopening a contract on the ground of fraud or mistake is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. The question of fact to be determined in this case should be when did Whitcher determine or discover that he had made a mistake in signing the faulty agreement. There is no doubt that Pacific knew or suspected that he had made a mistake.

Whitcher has been completely disabled since his injury and is completely disabled now. The use of legal dodges to deny him his monetary relief where his medical need is verified, shows the absurdity of courts in this Workers' Compensation system. The consent of Whitcher to the final settlement here cannot be implied under our statutes because

14

he was never offered a proposal which became the final settlement. Section 28-2-503, MCA. The purported contract could be altered here only by another contract here in writing which does not exist, or by an executed oral agreement which also does not exist. Section 28-2-1602, MCA. There being no contract, Whitcher has no problem with respect to his right to additional compensation, no contract, no bar through the statute of limitations.

_John C. Sheehy_
Justice