ELICH, Appellant, *v.* INDUSTRIAL ACCIDENT BOARD, Respondent.

(No. 8429.)

(Submitted January 6, 1944. Decided May 3, 1944. Resubmitted September 25, 1944. Final Decision December 30, 1944.)

[154 Pac. (2d) 793.]

Messrs. *Lester H.* and *Henry Loble,* and *Mr. Albert H. Angstman,* for Appellant, submitted an original and a reply brief; *Mr. Angstman* argued the cause orally.

*Mr. Myles J. Thomas,* for Respondent board, submitted a brief and argued the cause orally.

The following attorneys appeared by brief or oral argument on hearing of motion for rehearing as *amici curiae*:

Messrs. *W. H. Hoover, R. H. Glover, John V. Dwyer;* and *James T. Finlen, Jr.; Coleman, Jameson & Lamey; James M. Haughey; James H. Kilbourne; Thomas C. Colton; Jardine, Chase & Stephenson; W. W. Mercer; W. L. Murphy; Weir, Clift & Bennett; Hans Walchli; Ralph J. Anderson; Rankin & Acher; G. F. T. Higgins,* and *Coyle & Ybarra.*

Opinion: PER CURIAM.

The plaintiff, while employed by the Jeffries Coal Mining Company in Musselshell County, sustained an industrial accident

on January 20, 1933, compensable under the Workmen's Compensation Act. His employer was operating under Plan 3 of that Act. Rev. Codes 1935, sec. 2990 et seq. Plaintiff was paid compensation of $21 per week, the maximum amount for either total or partial disability, for 312½ weeks. The order of the Industrial Accident Board definitely setting that amount was made on April 17, 1934, and was entitled "Order approving a Compromise Settlement." The final payment was made on July 5, 1938. On August 16, 1938, more than four years after the final order, he filed a petition for a hearing before the Industrial Accident Board. The purpose of the application was to secure an order of the board for the payment of compensation for the balance of the 500 weeks provided by the statute for permanent disability. The hearing was denied and likewise a subsequent petition for rehearing. Appeal was taken to the district court for Musselshell County and the matter was submitted to the court on the record made before the board and briefs of counsel. Judgment was for the respondent board and this appeal followed.

Immediately after the injury plaintiff, following the usual course, applied for compensation. Payment was made to him for some weeks at the maximum of $21 per week. Plaintiff was examined by a physician employed by the board and subsequently by a physician employed by himself.

Both doctors reported on their examination of the plaintiff. Dr. Allard concluded after his examination that plaintiff was "a 50 per cent permanent partial disability." Dr. Porter's report uses this language: "We are aware of the percentage of disability given you by Dr. Allard but with the additional findings in the chest and eye, we feel that you would not be asking too much of the board if you asked for a rating of seventy-five per cent permanent disability." From these two reports it is clear that what the two doctors were estimating was the degree of disability and not its probable duration, and that is where the difference arose between plaintiff and the

board. Plaintiff wanted compensation based on a seventy-five per cent disability and the board wanted to pay on the basis of a fifty per cent disability, but they clearly agreed, as did the doctors, that whatever the disability was it would be permanent.

While some argument is made as to the plaintiff's understanding of correspondence between himself and the board, we must assume that he understood it. In his letter asking for a compromise settlement he defines the issue as "the matter of the degree of permanent disability." In a letter to plaintiff, dated February 1, 1934, the chairman of the board wrote, "You will note that Doctor Allard rates you 50% of a total disability." Other matters appear in the record which show conclusively that the dispute was over the degree and not the duration of the disability and that there was something to compromise.

After the reports of the doctors the board offered to compromise with the plaintiff by splitting the difference between the 75 per cent of disability found by plaintiff's doctor and the 50 per cent found by the board's doctor, thus arriving at a permanent partial disability rating of 62½ per cent. This award it put into effect, however, by granting the plaintiff compensation at the maximum rate of $21 per week for 312½ weeks, or 62½ per cent of the 500 weeks to which he was entitled upon his permanent injury. After some correspondence, plaintiff signed a letter in which he agreed to settle his claim for compensation on that basis, and thereafter the order entitled "Order Approving a Compromise Settlement" was made by the board which further recited that it was ordered and adjudged that the Industrial Accident Fund pay in accordance with the agreement "in full and final compromise settlement of his [plaintiff's] claim for compensation arising out of his accidental injury." No hearing was held before the board and the entire matter rests upon this order. It is the defendant's position that since plaintiff's petition to the board was filed more than two years after the date of the order above referred to, the board had lost jurisdiction under the provisions of section 2952, Revised Codes

1935. At the time of plaintiff's injury and the compromise settlement that section provided:

"The board shall have continuing jurisdiction over all its orders, decisions and awards, and may at any time, upon notice, and after opportunity. to be heard is given to the parties in interest, rescind, alter, or amend any such order, decision or award made by it upon good cause appearing therefor. Provided, that the board shall not have power to rescind, alter, or amend any final settlement or award of compensation more than two years after the same has been made, and provided further that the board shall not have the power to rescind, alter or amend any order approving a full and final compromise settlement of compensation. Any order, decision, or award rescinding, altering, or amending a prior order, decision, or award, shall have the same effect as original orders or awards."

On February 26, 1937, the section was amended (Chapter 67, Laws of 1937) to increase the statutory limitation to four years after the final order; but it is unnecessary to consider which limitation applies, since plaintiff's petition was within neither. No proof other than the records of the board was adduced in the lower court, and the findings of fact and conclusions of law of that court show that the only thing considered there was whether the order was a final compromise settlement, and having found that it was, the court held that plaintiff's petition came too late and was barred under section 2952. By the briefs and the assignments of error the only question presented to this court revolves around those findings.

While many allegations appear in the petition and many errors are specified, all of them are immaterial if this was a "full and final compromise settlement of compensation."

The contentions of plaintiff here are that what was compromised was not the degree of disability, but the number of weeks during which compensation should be paid; that the latter was not a lawful subject for compromise since his disability was determined as permanent partial, which section 2914 makes com-

pensable throughout the duration of the disability, not exceeding five hundred weeks; that the board hád no power to limit the payments to less than five hundred weeks since the disability continued beyond that time; and that the order by which it purported to do so was invalid and not in the eyes of the law a valid "final *compromise* settlement", within section 2952 as amended. For this position plaintiff relies upon *Meznarich* v. *Republic Coal Co.*, 101 Mont. 78, 53 Pac. (2d) 82, and *Lunardello* v. *Republic Coal Co.*, 101 Mont. 94, 53 Pac. (2d) 87, which, however, are not applicable to the facts of this case. Here, as shown above, while on its face the order was for the payment of compensation for only 62½ per cent of the five hundred weeks, it is apparent that that method was used merely as an equivalent of payments for the entire five hundred weeks at 62½ per cent (or ⅝) of the maximum $21 payment, which percentage was clearly adopted as the proportion of his loss of earning power compensable under section 2914. Whether we multiply $21 by ⅝ of 500 (312½), or whether we multiply ⅝ of $21 (13.12½) by 500, the result is $6,562.50. Thus what was compromised was the amount of compensable lost earning power, as measured by the degree of the partial disability. Plaintiff was benefited rather than harmed by the method used, since the present value of 312½ weekly payments of $21 each is greater than the present value of 500 weekly payments of $13.12½ each.

Under the statutes compromise settlements are clearly authorized if there is something to compromise. (Sec. 2952, Rev. Codes, supra.) Here the compromise was of a matter lawfully subject to compromise, there was therefore consideration for the compromise settlement, and plaintiff was bound by it. This case falls within the recent decision of *Williams* v. *Industrial Accident Board*, 109 Mont. 235, 97 Pac. (2d) 1115, and not within *Meznarich* v. *Republic Coal Co.*, supra, and *Lunardello* v. *Republic Coal Co.*, supra.

There being a valid compromise settlement which was final

150

the board was, under section 2952, supra, without power to re-open the case or to consider plaintiff's petition out of which this appeal arose. (*Williams* v. *Industrial Accident Board,* supra.)

Judgment affirmed.

Rehearing denied January 23, 1945.