No. 88-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ROBERT KIMES,

        Claimant and Respondent,

   -vs-

CHARLIES FAMILY DINING & DONUT SHOP,
        Employer,
    and
PACIFIC EMPLOYERS INSURANCE COMPANY,

       Defendant and Appellant.


APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
               Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Utick & Grosfield; Andrew J. Utick, Helena, Montana

    For Respondent:

        Richard J. Pyfer, Helena, Montana


               Submitted on Briefs:  May 26, 1988

                   Decided: August 9, 1988

Filed:  AUG 9  1988

*Ethel M. Harrison*

               Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant Mr. Kimes received disability benefits for a work-related injury to his knee until he entered a settlement agreement with the insurer, Pacific Employers Insurance Company (Pacific). Pacific appeals the ruling of the Workers' Compensation Court which set aside the settlement. Mr. Kimes cross appeals the discontinuation of his temporary total disability benefits. We affirm.

The issues are:

1. Did the lower court err in setting aside the full and final settlement agreement on the grounds of mutual mistake of fact?

2. Did the lower court err by failing to continue temporary total disability benefits beyond August 20, 1986?

Mr. Kimes injured his knee in 1983 when he fell down steps during his employment as a cook for Charlie's Family Dining and Donut Shop. The employer accepted liability for benefits and paid compensation to Mr. Kimes. An orthopedic physician repaired a ruptured cruciate ligament in the knee, after which he assigned Mr. Kimes a 30 percent impairment rating to his left knee and leg. The physician felt, however, that Mr. Kimes should be able to return to work as a cook. In January 1985, the parties entered a full and final settlement agreement for a $14,500 lump sum.

In November 1985, Mr. Kimes returned to see his physician because of continuing problems with his left knee. The physician referred Mr. Kimes to a second doctor, who suggested that Mr. Kimes's problems could be due to a tear of the medial meniscus, which is a cartilage in the knee. Surgery was performed, a tear was found, and the meniscus was removed. The first physician has testified by deposition that X-rays show that the tear in the meniscus was present before

2

the settlement was reached, but that he simply did not detect it.

Mr. Kimes petitioned the Workers' Compensation Court to reopen his case based on a mutual mistake of medical fact. The court held a hearing at which Mr. Kimes and the attorneys for both sides presented testimony. The depositions taken of the physician both before and after the settlement were also available to the court. The court set aside the settlement agreement and ruled that the employer is entitled to a credit for the settlement amount.

## I

Did the lower court err in setting aside the full and final settlement agreement on the grounds of mutual mistake of fact?

As this Court discussed in Kienas v. Peterson (Mont. 1980), 624 P.2d 1, 37 St.Rep. 1747, general contract law gives courts the right to reopen a compromise settlement when there has been a non-negligent mutual mistake of material fact. In Kienas, the claimant suffered an injury to his back. After a full and final settlement was made, doctors concluded that the injury had also aggrevated claimant's previous condition of cerebral palsy, rendering him totally disabled. Ruling that there was a mutual mistake of material fact, this Court set aside the settlement agreement.

In Weldele v. Medley Development (Mont. 1987), 738 P.2d 1281, 44 St.Rep. 1062, the claimant had suffered an industrial shoulder injury. At the time full and final settlement was made, the injury had been diagnosed as a rotator cuff tear and a healed carpal tunnel syndrome. After the settlement, the claimant was diagnosed as having thoracic outlet syndrome in the shoulder. The physician testified that it was more probable than not that the claimant's work-related

3

injury was the cause. This Court affirmed the lower court's conclusion that those circumstances constituted a mistake of fact upon which the settlement could be reopened.

In contrast, where findings in medical reports following a settlement are consistant with those prior to the settlement, where the impairment rating is substantially unchanged, and where the claimant is in much the same condition as at the time of settlement, there is no mutual mistake of fact justifying reopening a settlement. Sollie v. Peavey Co. (Mont. 1984), 686 P.2d 920, 41 St.Rep. 1684. Variance in the symptom level, where claimant knew this level would vary, is not enough. Sollie, 686 P.2d at 924.

Pacific argues that there was no mutual mistake of fact here. It asserts that Mr. Kimes and his attorney were aware at the time of the settlement that there were potentially permanent problems with the knee and that those problems were related to Mr. Kimes's industrial accident. However, not only has Mr. Kimes's disability rating increased as a result of the post-settlement surgery to remove the torn meniscus, but his prognosis now includes probable degenerative changes in his knee joint. He now requires pain medication and has been advised not to return to his former line of work as a cook. The X-rays show that Mr. Kimes had a tear in his medial meniscus at the time of settlement, and it is undisputed that this was unknown to the parties when settlement was made.

While the dissent argues that the Workers' Compensation Court does not have statutory authority to set aside this full and final compromise agreement, the parties did not raise that argument. Further, this Court is not so limited where there has been mutual mistake. We conclude that the uncontradicted medical evidence establishes a material mistake of fact relating to both the nature and extent of Mr.

4

Kimes's injury.  We hold that the full and final settlement entered in this case may be reopened on the basis of this material mistake of fact.

## II

Did the lower court err by failing to continue temporary total disability benefits beyond August 20, 1986?

The Workers' Compensation Court terminated Mr. Kimes's temporary total disability benefits as of the date the physician, by deposition, stated that Mr. Kimes had reached his maximum medical recovery.  Mr. Kimes argues that he is entitled to an award of continued temporary total disability benefits until he reaches a point at which he can return to the job market.

Under the statutory scheme in effect at the time of Mr. Kimes's injury, temporary total disability did not exist past the time of maximum healing.  Section 39-71-116(19), MCA (1983), provided:

> "Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.  [Emphasis supplied.]

The physician testified on August 20, 1986, that Mr. Kimes had reached maximum healing.  We conclude that the lower court was correct in terminating temporary total disability benefits as of August 20, 1986.  This does not in any way constitute a ruling on Mr. Kimes's right to permanent total or permanent partial disability benefits.

Affirmed as to the result reached.

_____
Justice

We concur:

5

Chief Justice

John Conway Harrison

John C. Sheehy

R. C. McDonough

William E. Hunt Sr.

Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

In my view the Workers' Compensation Court erred procedurally and substantively in setting aside the full and final settlement.

The majority in this case, as in Weldele v. Medley Development (Mont. 1987), 738 P.2d 1281, 44 St.Rep. 1062, has tacitly approved the unauthorized practice, by the Workers' Compensation Judge, of setting aside full and final settlements when the legislature has expressly removed such authority from the Workers' Compensation Court.

Section 39-71-204(2), (1985) MCA, applicable to this case, includes the following:

> [E]xcept as provided in 39-71-2908, the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation. (Emphasis added.)

Section 39-71-2908, (1985) MCA, states:

> All orders allowing full and final compromise settlements of workers' compensation claims shall be immediately referred to the workers' compensation judge, and the judge may, within 10 days of the judge's receipt of an order, disapprove an order allowing a full and final compromise settlement.

In addition, § 39-71-2909, (1985) MCA, provides:

> The judge may, upon the petition of a claimant or an insurer that the disability of the claimant has changed, review, diminish, or increase . . . any benefits previously awarded by the judge or benefits received by a claimant through settlement agreements. However, the judge may not change any final settlement agreement or award of compensation more than 4 years after the

7

> settlement has been approved by the
> division _or_ _any_ _order_ _approving_ _a_ _full_
> _and_ _final_ _compromise_ _settlement_ _of_
> _compensation_. (Emphasis added.)

Here the Division entered its order approving full and final compromise settlement on February 7, 1985 and said order was then referred to the Workers' Compensation Judge, pursuant to § 39-71-2908, (1985) MCA, who reviewed the file, approved the order, and closed the claimant's file. After that point, in my view, the Workers' Compensation Court was without authority to set aside the settlement agreement. A review of Kienas, relied upon by the majority, is necessary to explain my view. In Kienas, the claimant, who was not represented by counsel, entered into a full and final compromise settlement for a payment of $4,040, where the claim involved potential payments in excess of $115,000. The Workers' Compensation Court refused to set aside the settlement, and on appeal, this Court, finding the case to be unique, applied contract law and reversed and remanded, without discussing § 39-71-204, (1985) MCA and § 39-71-2909, (1985) MCA, which limits the power of the Workers' Compensation Court to rescind, alter, or amend an order approving a final compromise settlement. Upon rehearing Kienas, this Court considered § 39-71-204, (1985) MCA and § 39-71-2909, (1985) MCA, stating the following:

> Petitioner argues that the Workers' Compensation Court had no power to alter or rescind a full and final compromise settlement agreement four years after the parties had executed the same. Section 39-71-204, MCA. However, in Kienas, the Workers' Compensation Court did not set aside the agreement. _This_ _Court_ _set_ _aside_ _the_ _agreement_. _Our_ _appellate_ _power_ _is_ _not_ _limited_ _to_ section 39-71-204 nor 39-71-2909, MCA. See section 3-2-204, MCA.

8

> It is universally accepted tenet of contract law, statutory in our state, that consent to the contract is lacking if it is entered into through mutual mistake or a material fact by the parties. We found such a mutual mistake in the compromise settlement agreement in this case. In applying ordinary contract law to reach our result, we are not unduly broadening the possibilities of reopening workers' compensation settlements. We are simply finding here that a contract to settle did not exist in the first place. (Emphasis added.)

Kienas v. Peterson, Opinion on Rehearing (Mont. 1981), 38 St.Rep. 320, 321.

In addition to the lack of authority by the Workers' Compensation Judge to set aside the settlement agreement, I have a second problem with the majority opinion. If the majority is "simply finding here that a contract to settle did not exist in the first place" (see Kienas quote above) then, in my opinion, it can only do so by ignoring the pre-injury and post-injury medical history, in addition to the expressed intent of the parties as set forth in the settlement agreement. The medical history indicates that claimant's anterior cruciate ligament was torn in 1979 when, as a pedestrian, he was struck by an automobile and that such pre-existing problem led to the industrial injury, and that following surgery the cruciate ligament was better than it had been prior to the first slip and fall at work, and that after reaching a medically stable condition, the claimant, on the first day he was returning to work, injured the knee in a non-industrial motorcycle accident. The medical record is clear that the only permanent injury sustained by claimant was confined to the lower left extremity and § 39-71-705, (1985) MCA, limits permanent partial disability payments for such an injury to 200 weeks. Here, the defendant's payments were the equivalent of 215.96 weeks of benefits. These

9

factors, in my opinion, indicate that the claimant, and his attorney, were fully cognizant of the material facts when they both signed claimant's petition, prepared by his counsel, which petition reads as follows:

> The undersigned claimant was accidentally injured on June 16, 1983, while employed by Charlie's Family Dining & Donut Shop, an employer enrolled under Compensation Plan No. II of the Montana Workers' Compensation Act. The claim was filed and accepted by the insurer for the payment of any compensation and medical benefits due.
>
> The total compensation paid to date is $_____ 16,408.00_____.
>
> The total medical and hospital benefits paid to date are $_____ $5,250.00_____.
>
> A controversy exists between this claimant and insurer over the amount and duration of compensation. This controversy has been resolved by an agreement between the claimant and the insurer wherein the claimant agrees to accept the sum of Fourteen Thousand Five Hundred ($14,500.00) Dollars in a lump sum in a full and final compromise settlement, which represents compensation for __129+__ weeks. Further medical and hospital benefits are expressly hereby reserved by the claimant unless otherwise indicated in this petition. This settlement includes attorney fees.
>
> The claim [sic] hereby petitions the Division of Workers' Compensation, with the concurrence of the above named insurer, for approval of this petition and that the case be fully and finally closed on the basis set forth above. <u>The claimant understands that by entering into a full and final compromise settlement, both the named insurer and the claimant agree to assume the risk that the condition of the claimant, as indicated by reasonable investigation to date, may be other than it appears, or it may change in the future.</u> The claimant further understands that another settlement option is available to him which would allow the settlement to be reconsidered within a four-year period, but finds that closing the settlement finally at this time is in his best interest. <u>The claimant understands that if this</u>

10

<u>petition is approved, the claim is forever closed and can never again be reopened.</u>  (Emphasis added.)

DATED this __15__ day of January, 1985.

(signed) Robert Kimes
Robert Kimes, Claimant
2131 9th Avenue
Helena, Montana   59601

WITNESS:


(signed) John C. Doubek

The ___Defendant___ hereby concurs and joins in the foregoing petition for full and final compromise settlement.

DATED this __28__ day of __January__, 1985.

(signed) Andrew J. Utick
Authorized Representative
its Attorney

It is obvious that the language used was in direct response to the <u>Kienas</u> decision, and was drafted by counsel for claimant to meet the defendant's requirements and to avoid the possibility of the agreement being set aside.  It appears that the English language does not contain words adequate to draft a legally enforceable "full and final compromise settlement."

I would reverse.

_____
Justice

I join in the foregoing dissent of Mr. Justice L. C. Gulbrandson.

_____
Chief Justice

11