No. 87-493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

TERRY PIPINICH,

       Plaintiff and Appellant,

 -vs-

TOM BATTERSHELL,

       Defendant and Respondent.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John C. Doubek argued; Small, Hatch, Doubek & Pyfer,
Helena, Montana

    For Respondent:

        Ronald F. Waterman argued; Gough, Shanahan, Johnson
& Waterman, Helena, Montana

---

Submitted:  June 15, 1988

Decided:  July 14, 1988

Filed: JUL 1 4 1988

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from a judgment of the First Judicial District Court, Lewis and Clark County, granting defendant/respondent Tom Battershell's (Battershell) summary judgment motion against plaintiff/appellant, Terry Pipinich (Pipinich) on a complaint and counterclaim and dismissing the action initially filed by Pipinich based on allegations of fraud. The counterclaim is not at issue in this case. Pipinich's appeal is based on the summary judgment ruling dismissing the complaint. We affirm.

The rephrased issue presented to this Court is:

Whether the District Court erred in granting summary judgment to Battershell.

The case centralizes around a claim by Pipinich that Battershell misrepresented the worth of the two individual's construction company, Sunrise Construction Company, Inc. (Sunrise), when Pipinich sold his share to Battershell.

Sunrise was originally formed in 1979 by Pipinich and Gary Duval (Duval), after the two had previously worked together at Reber Construction Company. Duval sold his interest to Battershell and Battershell and Pipinich each held a 50% share of the business. Pipinich was in charge of the field construction projects and Battershell handled the books, mail and bank accounts for the business. Battershell also was involved on a Sunrise project in Butte.

The Butte project, which actually involved Sunrise as a subcontractor of A.D. McKee Construction on a series of three construction contracts, is central to this case. The first contract had been awarded prior to the time Pipinich sold his share in Sunrise to Battershell and construction work had commenced on the project. Pipinich had actually been

2

involved in the bid proposal on this project. The record indicates that the other two projects had not been let for bid at the time Pipinich sold out.

Sometime in April of 1981, Battershell and Pipinich concluded they could no longer work together and one party would have to buy the other's interest. Pipinich claims the breakup occurred because he went through the mail to obtain two subcontractor bids to compile a bid package on a project. He claims this gave Battershell an excuse to force him out of the company.

At any rate, a severing of the relationship occurred. Pipinich agreed to sell his interest for approximately $250,000 in cash and assets along with relief from debt Pipinich owed Sunrise. Battershell allegedly told Pipinich that his share was worth no more than $200,000. There is also evidence that Pipinich originally wanted $300,000. Pipinich consulted with Sunrise's accountant, William Holmlund, but did not attempt to ascertain the company's actual worth other than relying on what Battershell told him.

The Sunrise tax return balance sheet for fiscal year 1981 was not completed at the time of the buy out. The balance sheet was later completed and shows the fiscal year for the company ended on March 31, 1981. At that time Sunrise showed total assets of $1,144,905. This same balance sheet showed liabilities in the amount of $925,323.

In November of 1985 Pipinich alleges he was told by an attorney from Butte working on another case which involved Battershell that the company was allegedly worth in excess of $1 million when Pipinich sold out. Based on this information Pipinich consulted counsel in this case who did further "investigation". Pipinich filed a complaint on July 11, 1986.

3

Pipinich claims Battershell allegedly misrepresented the value of the company so as to capitalize on the transaction. The complaint alleged Pipinich was directly and proximately damaged by the false, fraudulent, reckless, deceitful, willful and unlawful acts and omissions of Battershell. Battershell filed an answer and counterclaim on September 4, 1986 requesting Pipinich be found liable on promissory note debt obligations totalling $38,500.30 plus interest.

On July 6, 1987, Battershell filed motions for summary judgment on the complaint and counterclaim. On September 30, 1987, the court orally granted Battershell's motions for summary judgment. A memorandum and order, along with a judgment, granting Battershell summary judgment and dismissing the complaint was filed October 19, 1987. This same order awarded Battershell $51,330.58 on the counterclaim after Pipinich admitted owing on the promissory notes. Pipinich does not appeal this aspect of the order. In granting summary judgment, the District Court adopted Battershell's proposed order verbatim.

Pipinich claims the District Court's order ignored the common law tort theory of actual fraud and the verbatim adoption was erroneous. Citing, Sawyer-Adecor International, Inc v. Anglin, et al. (1982), 198 Mont. 440, 646 P.2d 1194. This Court stated that it "disapprove[s], heartily and stoutly, the verbatim adoption of proposed findings and conclusions." Sawyer-Adecor, 646 P.2d at 1198. However, Montana law allows verbatim adoption of findings and conclusions where they are comprehensive and detailed, supported by the evidence before the court, and are not clearly erroneous. Olsen v. McQueary (Mont. 1984), 687 P.2d 712, 715, 41 St.Rep. 1669; R.L.S. v. Barkhoff (1983), 207 Mont. 199, 674 P.2d 1082, 1085. Upon review of the record in

4

this case and the findings and conclusions, we hold that the District Court did not err in adopting Battershell's proposed order where the court had previously orally granted his motions for summary judgment.

Immediately prior to the hearing on the motion for summary judgment, Pipinich filed a "supplemental legal memorandum" in which he raised issues of breach of a fiduciary duty of a partner and bad faith on the part of Battershell. These two theories are also advanced by Pipinich on this appeal.

We note initially that the business entity involved in this case was not a partnership but a corporation. Therefore, Pipinich's reliance on a partner's breach of a fiduciary relationship creating a claim for bad faith is misplaced. A partnership and corporation are two separate legal entities under the law. Sections 35-1-101 et seq. and 35-10-101 et seq., MCA.

We note additionally that Pipinich failed to allege fraud with particularity pursuant to Rule 9(b), M.R.Civ.P. An action for actual fraud requires that a number of elements must be averred and satisfied to establish a prima facie case. These elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer's ignorance of falsity of the representation; (7) the hearer must rely on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by reliance on the representation. First National Bank in Havre v. Nelson (Mont. 1987), 741 P.2d 420, 421, 44 St.Rep. 1411; Krone v. McCann (1982), 197 Mont. 380, 387, 642 P.2d 584, 587-588.

5

Further, in answers to interrogatories specifically requesting facts supporting his allegations of fraud, Pipinich referred Battershell back to the allegations of the complaint. Rule 33, M.R.Civ.P., allowing interrogatories as a discovery tool, has the purpose of promoting the ascertainment of truth and ultimate disposition of lawsuits by assuring mutual knowledge of all relevant facts gathered by both parties. Massaro v. Dunham (1979), 184 Mont. 400, 603 P.2d 249. As argued by Battershell, interrogatories allow for the just, speedy and inexpensive determination of actions and assure judgment is rendered on the facts as they actually exist. Wolfe v. Northern Pacific Railway Co. (1966), 147 Mont. 29, 409 P.2d 528. Mere reference back to complaint allegations is insufficient to answer an interrogatory. Unresponsive, incomplete and evasive answers, such as those presented by Pipinich in this case, should be dealt with in an expeditious manner by the District Court even if it requires dismissal of a suit.

The standard of review on summary judgment has been made clear by this Court:

> On review, we will uphold the summary judgment if there is no genuine issue of material fact and the evidence shows the moving party is entitled to judgment as a matter of law. Sevalstad v. Glaus (Mont. 1987), 737 P.2d 1147, 1148, 44 St.Rep. 930, 932 . . .
>
> When the movant has met this initial burden, the party opposing the motion must supply evidence supporting the existence of a genuine issue of fact. [Citation omitted.] Rule 56(c), M.R.Civ.P.

Vogele v. Estate of Schock (Mont. 1987), 745 P.2d 1138, 1141, 44 St.Rep. 1950, 1953.

Pipinich contends that "unless the moving party initially presents admissible evidence that a material question of fact does not exist, the non-movant has no duty to come forward with counter-proof." Citing, Mathews v. Glacier General Assurance Company (1979), 184 Mont. 368, 603 P.2d 232. Here, Battershell came forward with admissible evidence that no material question of fact exists. Pipinich has not met his counter-proof burden.

Rule 56(c), M.R.Civ.P., states the judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, depositions were taken of both Battershell and Pipinich. An affidavit of Holmlund was also presented. Interrogatories, although not initially complied with on the part of Pipinich, were tendered and answered by the parties. Despite no specific date for closure of discovery, pursuant to Rule 16(b), M.R.Civ.P., sufficient evidence was present for the court to rule on the summary judgment motion.

Battershell's brief in support of the motion for summary judgment, filed on July 6, 1987, is compelling in this case. In the brief, Battershell cites to Pipinich's deposition:

Q. [D]id you have any documents at the time that you filed that Complaint?

A. Not in my possession.

Q. In whose possession were those documents?

A. [Plaintiff's counsel] showed me a document. It was in a insurance -- I

7

don't know what it was, but it was an insurance questionnaire.

Pipinich asserts the insurance questionnaire, signed by Battershell, is significant because it lists the value of Sunrise at $6,000,000. A copy of the questionnaire is attached to Pipinich's brief in opposition to the motion for summary judgment. It does indeed list the approximate value of the business at $6,000,000 but the date of the application is March 29, 1982, nearly a year after the transaction between Pipinich and Battershell. A document filled out a year after the transaction, without more, clearly does not create a material issue of fact. Upon further questioning at the deposition, Pipinich was asked if he had any other documents supporting his claim and he replied unequivocally: "no".

Pipinich was also questioned concerning his conversations with the Butte attorney who allegedly informed Pipinich that Sunrise was worth in excess of $1,000,000. Testimony was presented as follows:

Q. Did he show you any documents to support his contention that at the time you sold out, the company was worth in excess of $1 million?

A. No.

Q. Since then have you seen any documents that support that lawyer's contention that when you sold out, the company was worth in excess of $1 million?

A. None, other than the one I mentioned earlier.

Q. Which one was that?

A. The insurance.

8

Q.  The insurance questionnaire?

A.  Right.

Further questioning of Pipinich showed no additional investigation, other than contacting his own attorney, was undertaken to ascertain the facts upon which the attorney from Butte based his statement.  Upon further investigation by Pipinich's attorney, no documents were found to support the allegations of fraud.

Finally, Pipinich was questioned as to the facts he possessed which supported the complaint:

Q.  At the time the Complaint was filed, could you tell me what facts you believed existed to support your contention that Mr. Battershell defrauded you?

A.  I never had any facts.

Q.  At the time the complaint was filed, you had absolutely no facts.

A.  No.

Q.  Since the Complaint has been filed until the date of your deposition today, have you gathered any other facts or been shown any other facts that support your contention that Mr. Battershell defrauded you?

A.  Not facts.

Q.  No facts.  By that, I take that there has been something told to you other than facts at the present time?

A.  I can't say that they weren't facts. Evidently I believe they were.

Nothing of substance to support Pipinich's claim was stated at this deposition.  Attached to Pipinich's brief in opposition to Battershell's motion for summary judgment was

the balance sheet attached to tax returns for Sunrise for fiscal year 1981. It is suggested by Battershell, and highly probable, that the Butte attorney who informed Pipinich that the value of the company in 1981 was over $1 million was referring to the fact that Sunrise listed assets in excess of $1 million. However, if the liabilities of the company are subtracted from this amount, the offer made by Battershell actually exceeded the value of Pipinich's equity.

Upon the above depositional testimony and a consideration of the tax return balance sheet, the District Court could adduce that no facts existed to satisfy the first requisite of a fraud claim -- that there was a material misrepresentation.

The failure of Pipinich to show a misrepresentation on the part of Battershell also bars any claim of constructive fraud in this case. No failure of a duty to disclose has been shown by the facts presented and there was no fiduciary relationship between Battershell and Pipinich in this case. Pipinich cites to Alexander v. Texaco, Inc. (D.C. Mont. 1981), 530 F.Supp. 864 and Purcell v. Automatic Gas Distributors, Inc. (1983), 207 Mont. 223, 673 P.2d 1246, to support his constructive fraud argument but both cases are inapplicable. In Alexander, supra, the federal district court found Texaco liable for failing to disclose its intention to leave Montana. In Purcell, supra, a gas distributor breached a fiduciary duty.

Here, from the above stated evidence, Battershell's burden of showing no genuine issue of material fact was met. In order to prevent summary judgment, Pipinich must produce evidence sufficient to raise a genuine issue of fact. Spadaro v. Midland Claims Service, Inc. (Mont. 1987), 740 P.2d 1105, 1108, 44 St.Rep. 1221; Kaiser v. Town of Whitehall (Mont. 1986), 718 P.2d 1341, 1342, 43 St.Rep. 846. Pipinich

10

failed to meet his burden of showing a genuine issue of material fact.

We have held that claimants cannot rest on the mere allegations of the complaint in satisfying the burden required to resist a motion for summary judgment once the moving party has met its burden. See generally, Conboy v. State (Mont. 1985), 693 P.2d 547, 42 St.Rep. 120. In Conboy, supra, we stated:

> Failure of the party opposing the motion to either raise or demonstrate the existence of a genuine issue of material fact, or to demonstrate that the legal issue should not be determined in favor of the movant, is evidence that the party's burden was not carried. Summary judgment is then proper, the court being under no duty to anticipate proof to establish a material and substantial issue of fact.

Conboy, 693 P.2d at 551.

The District Court properly determined that no genuine issue of material fact was presented by the plaintiff. We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

11

Justices

12