No. 90-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

RODNEY WOLFE,

       Claimant, Respondent,
       and Cross-Appellant,

   v.

BOYD E. WEBB

       Employer,

   and

STATE COMPENSATION MUTUAL INSURANCE FUND,

       Defendant and Appellant.


APPEAL FROM:   Workers' Compensation Court,
                The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

       For Appellant/Cross-Respondent:

           William J. Mattix, Crowley, Haughey, Hanson,
           Toole & Dietrich, Billings, Montana.

       For Respondent/Cross-Appellant:

           Lloyd E. Hartford, Attorney at Law,
           Billings, Montana.

FILED

JAN - 2 1992

Filed:   *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 10, 1991

Decided:  January 2, 1992

_____
                     Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Claimant Rodney Wolfe filed his petition in the Workers' Compensation Court asking that court to reopen his case, which had been settled with defendant State Compensation Insurance Fund on March 8, 1983. Claimant alleged that at the time of the prior settlement the parties were mutually mistaken about material facts concerning claimant's physical condition.

The Honorable Nat Allen was appointed by the Workers' Compensation Court to serve as the hearing examiner, and this case was tried before the hearing examiner on April 11 and 12, 1990. Following a trial and the submission of written arguments by the parties, the Workers' Compensation Court adopted the hearing examiner's recommendation and entered judgment for claimant which set aside the parties' earlier settlement agreement, reinstated temporary total disability benefits, and awarded attorney fees to claimant. The court refused to impose a statutory penalty on defendant in addition to the benefits which were awarded. From that judgment, defendant appeals, and claimant cross-appeals. We affirm the judgment of the Workers' Compensation Court.

Defendant raises the following issues on appeal:

1. Did the Montana Workers' Compensation Court have jurisdiction to reopen the full and final compromise settlement which had been agreed upon by the parties?

2. Did the express language in the settlement agreement preclude the Workers' Compensation Court from setting it aside?

3. Did the Workers' Compensation Court abuse its discretion and commit reversible error when it adopted the findings of fact, conclusions of law, and judgment proposed by claimant after making minor changes of its own?

4. Was there substantial evidence to support the Workers' Compensation Court's determination that a mutual mistake of fact existed at the time the parties entered into their settlement agreement?

5. Was there substantial evidence to support the Workers' Compensation Court's award of temporary total disability benefits retroactive to October 1, 1985?

6. Was claimant entitled to an award of costs and attorney fees?

For his cross-appeal, claimant raises the following issue:

Did the Workers' Compensation Court err by failing to impose a statutory 20 percent penalty on defendant in addition to the benefits that were awarded?

## FACTUAL BACKGROUND

Claimant was injured on March 28, 1980, while employed by Boyd E. Webb who was insured against claims for workers' compensation benefits by defendant Montana State Compensation Insurance Fund.

Mr. Webb was involved in the business of installing oil and gas lines and irrigation pipe. Claimant was employed by Webb as a backhoe operator and laborer.

On the date of his injury, claimant was working in a six foot ditch and installing pipe when the sides of the ditch caved in and buried him up to his neck. As a result of this accident, he sustained crushing injuries across his upper body, including a fracture of his left clavicle and dislocation of his right clavicle where it formed a joint with his sternum. He also reported pain in one or more of his shoulders.

Claimant was initially treated for his injuries in Powell Hospital in Powell, Wyoming, but was eventually referred to D. R. Huard, M.D., an orthopedic surgeon in Billings, Montana. Dr. Huard treated claimant for approximately 16 months. During that time he performed two surgical procedures. In the first procedure, he grafted bone at the location of the fracture to the left clavicle because that fracture had failed to properly unite. In a second procedure, he resected, or cut away, the end of the right clavicle where it had previously formed a joint with the sternum. He did so in order to alleviate significant discomfort that claimant continued to experience as a result of the dislocation of that joint.

During the course of Dr. Huard's treatment, his records indicate that claimant also complained of pain in the area of his right shoulder. However, that was not his primary complaint and no treatment was rendered for that complaint at that time.

On May 11, 1981, Dr. Huard released claimant to return to work.

4

After returning to work, claimant continued to experience significant pain due to his injuries and was referred for further treatment to Peter V. Teal, M.D., a second orthopedic surgeon. Dr. Teal advised him that his pain could be lessened by resection of the entire right clavicle, but that since the clavicle provided stability to the shoulder, a significant cosmetic deformity would also result. For that reason, claimant postponed further surgery, but by January 1982, when he could no longer stand the pain, Dr. Teal removed two-thirds of the remaining right clavicle.

By May 1982, claimant had returned to work on a self-employed basis doing oilfield salvage work. In early 1983, he went back to work for another employer. However, the physical nature of that work caused him a substantial amount of pain and discomfort in his right arm and shoulder. He went to the bank and borrowed $13,500 which he used to purchase a pickup truck, trailer, tools, and equipment with which he could become self-employed in the oil pipe salvage business.

By that time, he had received a physical impairment rating from Dr. Teal equal to 10 percent of his right upper extremity. Although he was still in pain, he was unaware of any other injuries which had resulted from his industrial accident in 1980.

In order to repay the money which he had borrowed to invest in equipment for self-employment, claimant entered into settlement discussions with William Visser, a claims supervisor for appellant. Visser offered, and claimant, who was unrepresented at the time,

5

agreed to accept, $7000 in full settlement of his claim for any future disability benefits. On March 8, 1983, the Division of Workers' Compensation approved the full and final compromise settlement agreement which had been signed by the parties. The written agreement included the following provision:

> The claimant understands that by entering into a full and final compromise settlement, both the named insurer and the claimant agree to assume the risk that the condition of the claimant, as indicated by reasonable investigation to date, may be other than it appears, or it may change in the future.

Claimant testified that following settlement of his claim he continued to experience right shoulder problems. Toward the end of 1984 he moved to Jerome, Idaho where he took a job for Rocky Mountain Industries as the manager of their pipe yard. However, by October 1, 1985, he could no longer continue to perform that job due to right shoulder pain and he returned to Montana where he lived at the time of trial.

After returning to Montana, claimant worked sporadically as a farm laborer, but this work also aggravated his right shoulder. He returned to Dr. Teal who, based upon an arthroscopic examination, found a defect in the cartilaginous rim of the glenoid cavity. The glenoid cavity, with the head of the humerus, form the shoulder joint. On April 17, 1987, Dr. Teal readmitted claimant to the hospital where he performed surgery to repair and reattach the cartilaginous rim to the glenoid cavity and hopefully prevent further subluxation of the right shoulder. Claimant

6

continued to experience difficulties with his shoulder following surgery, and by November 24, 1987, Dr. Teal's records indicate that he was inquiring about possible replacement of his shoulder with a mechanical joint.

A further arthroscopic procedure was done to repair damage in the claimant's right shoulder in February 1988. On May 17, 1988, Dr. Teal increased claimant's impairment rating from 10 percent of his right upper extremity to 15 percent. He cautioned claimant against returning to any form of heavy labor and suggested that he be rehabilitated so that he could return to the job market and perform lighter duties.

Other orthopedic surgeons who have also examined claimant since Dr. Teal's last surgical procedure concur in the opinion that claimant will never be able to return to moderate or heavy work, and that there is no additional treatment which would be of further assistance to him.

Neither claimant nor his treating physician were aware, in 1983, of the additional damage to claimant's right shoulder which resulted in the 1987 surgery, additional physical impairment, and further restrictions on claimant's physical activities.

William Visser testified that neither was he aware of the possibility of a detached glenoid rim in claimant's right shoulder at the time that he settled with claimant, but that if he had known about the condition he probably would not have entered into the settlement agreement.

Based on these facts, the Workers' Compensation Court concluded that there had been a mutual mistake of material fact sufficient to justify setting aside the agreement entered into between the parties on March 9, 1983. The court found that claimant was temporarily totally disabled, and had been since he terminated his work in Jerome, Idaho on October 1, 1985. Temporary total disability benefits were awarded retroactive to that date.

Based on its decision in favor of claimant, the Workers' Compensation Court awarded attorney fees. However, the court refused to impose an additional 20 percent penalty, concluding that appellant was not unreasonable when it rejected claimant's request to set aside the earlier agreement.

I

Did the Montana Workers' Compensation Court have jurisdiction to set aside the full and final compromise settlement which had been agreed upon by the parties?

Appellant argues that the substantive law in effect at the time of claimant's injury establishes his rights under the Workers' Compensation Act, and that §§ 39-71-204, -2808, and -2909, MCA (1985), prohibited the Workers' Compensation Court from rescinding full and final compromise settlements.

Appellant further contends that this Court's prior decisions rescinded full and final compromise settlement agreements because of mutual mistakes of fact, but affirmed that the Workers' Compensation Court did not have the authority to do so. Appellant

relies on *Kienas v. Peterson* (1980), 191 Mont. 325, 624 P.2d 1; *Sollie v. Peavey Co.* (1984), 212 Mont. 197, 686 P.2d 920; *Hutchinson v. Pierce Packing Co.* (1985), 219 Mont. 18, 710 P.2d 64; *Bowen v. Anaconda Co.* (1986), 220 Mont. 185, 714 P.2d 142; *Weldele v. Medley Development* (1987), 227 Mont. 257, 738 P.2d 1281; and *Kimes v. Charlie's Family Dining* (1988), 233 Mont 175, 759 P.2d 986.

The seminal case on the subject of reopening workers' compensation settlements was *Kienas*. In that case, the claimant entered into a full and final settlement agreement based upon diagnosis of a back injury which did not take into account the possibility that the injury had aggravated claimant's cerebral palsy. Later medical information indicated that claimant's back injury may have in fact aggravated his underlying neurological condition. The Workers' Compensation Court refused to set aside the settlement agreement, and we reversed. We held that:

> The full and final compromise settlement entered into by the parties is a contract. The law of contracts applies in construing and determining the validity and enforceability of the settlement agreement.

*Kienas*, 624 P.2d at 2. We held that under § 28-2-102, MCA, consent of the parties was a prerequisite to a valid contract and that pursuant to § 28-2-401, MCA:

> "(1) An apparent consent is not real or free when obtained through:
>
> ". . .

9

"(e) mistake.

"(2) Consent is deemed to have been obtained through one of the causes mentioned in subsection (1) only when it would not have been given had such cause not existed."

Section 28-2-408, MCA:

"Mistake may be either of fact or law."

Section 28-2-409, MCA:

*"Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:*

*"(1) an unconscious ignorance* or forgetfulness *of a fact, past or present, material to the contract;* or

"(2) *belief in the present existence of a thing material to the contract which does not exist* or in the past existence of such a thing which has not existed."

*Kienas*, 624 P.2d at 3 (emphasis in original).

We held in *Kienas* that because neither party to that contract was aware of the exact nature or extent of the claimant's injury when the agreement was entered into, the parties were laboring under a material mistake of fact which required that the agreement be set aside.

We did not discuss statutory limitations on the Workers' Compensation Court's authority to set aside settlement agreements because that issue was not presented in *Kienas* and it was not the Workers' Compensation Court which set aside the agreement. What was clear from the *Kienas* decision is that settlement agreements for workers' compensation benefits, like other agreements, are subject

10

to the law of contracts, and that a Montana court which is not otherwise limited by statute has the authority to set those contracts aside based upon a mutual mistake regarding the nature and extent of a claimant's injuries.

In *Sollie*, we affirmed the Workers' Compensation Court's refusal to reopen a full and final compromise settlement because we concluded that the parties were not laboring under a material mistake as to the nature and extent of the claimant's injuries. However, in dictum which did not appear to be necessary to this Court's decision, we stated that:

> It is also important to consider Section 39-71-204, MCA, which limits the power of the Workers' Compensation Court to amend a compromise settlement:
>
> > "Except as provided in 39-71-2908, the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation."
>
> Section 39-71-2908, MCA allows the Workers' Compensation judge to disapprove an order allowing full and final compromise settlement within 10 days of the judge's receipt of an order. This Court has held in several cases that these statutes preclude reopening of Workers' Compensation settlements.

*Sollie*, 686 P.2d at 924.

In *Weldele*, where the claimant was allowed by the Workers' Compensation Court to reopen a case that had been settled on a compromise basis because of a mistake regarding the nature and extent of his physical injury, we affirmed the trial court's

11

authority to do so, in spite of the prohibition in § 39-71-204(2), MCA (1985), because:

> "[C]onsent to the contract is lacking if it is entered into through mutual mistake of a material fact by the parties." *Kienas*, 38 St.Rep. at 321. It is well settled that if there is no consent, there is no contract.

*Weldele*, 738 P.2d at 1283. Two members of this Court dissented from that decision based upon the statutory prohibitions which are relied upon by the defendant in this case. The dissenters distinguished *Kienas* for the reason that the Workers' Compensation Court had not set aside the agreement in that case. It was set aside by this Court under the theory that "[o]ur appellate power is not limited to Section 39-71-204 not 39-71-2909, MCA." *Weldele*, 738 P.2d at 1284 (Gulbrandson, J., dissenting) (quoting *Kienas v. Peterson* (1981), 38 St.Rep. 320, 321 (op. on reh'g)). The dissenters felt that the Workers' Compensation Court's decision in *Weldele* should be reversed based upon language found in our opinion in *Sollie*, which was discussed previously.

Finally, in *Kimes* we again affirmed a Workers' Compensation Court decision setting aside a full and final compromise settlement agreement based upon a mistake of fact regarding the nature and extent of claimant's physical injury. In response to the dissent's argument that the Workers' Compensation Court lacked jurisdiction to set aside the agreement, we stated:

While the dissent argues that the Workers' Compensation Court does not have statutory authority to set aside this full and final compromise agreement, the parties did not raise that argument. Further, this Court is not so limited where there has been mutual mistake. We conclude that the uncontradicted medical evidence establishes a material mistake of fact relating to both the nature and extent of Mr. Kimes's injury. We hold that the full and final settlement entered in this case may be reopened on the basis of this material mistake of fact.

*Kimes*, 579 P.2d at 988.

The *Hutchinson* and *Bowen* decisions are distinguishable from this case based on their facts and are not relevant to our discussion.

What we have then are a series of decisions by this Court that agreements settling claims for workers' compensation benefits are subject to contract law and can be set aside, at least by this Court, based upon a mutual mistake of fact regarding the nature and extent of the claimant's injury. We also had in effect, at the time of claimant's injury, statutes which appellant argues procedurally barred the Workers' Compensation Court, as opposed to this Court, from setting aside full and final compromise settlement agreements. Section 39-71-204(2), MCA (1985), provided in relevant part that:

Except as provided in 39-71-2908, the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation.

Section 39-71-2908, MCA, is not applicable. Section 39-71-2909, MCA (1985), provided that:

[T]he judge may not change any final settlement or award of compensation more than 4 years after the settlement

has been approved by the division or any order approving a full and final compromise settlement of compensation.

When this case was tried in April 1990, however, both of the sections relied upon by the defendant had been amended to remove any limitation on the Workers' Compensation Court's authority to set aside full and final compromise settlement agreements. Section 39-71-204, MCA (1987), now makes no reference to any limitation on the authority of the court to set aside such agreements, and § 39-71-2909, MCA (1987), simply provides as follows:

> The judge may, upon the petition of a claimant or an insurer that the disability of the claimant has changed, review, diminish, or increase, in accordance with the law on benefits as set forth in chapter 71 of this title, any benefits previously awarded by the judge.

We have previously held that compromise settlement agreements can be set aside based upon contract law. Whether the decision to set aside that agreement is made in this Court or the Workers' Compensation Court is merely a procedural difference and does not effect the substantive rights of either party. Therefore, the amendment to the workers' compensation statutes which eliminated any restriction on that court's authority to review and rescind compromise settlement agreements was a change in the procedural law. We have previously held that procedural rules in effect at the time that a case proceeds to trial are the rules that are to be applied to the resolution of that dispute. *State Comp. Ins. Fund v. Sky Country, Inc.* (1989), 239 Mont. 376, 379, 780 P.2d 1135, 1137; *Weiss v. State* (1986), 219 Mont. 447, 449, 712 P.2d 1315, 1316.

14

We conclude that at the time of the trial in this case, there was no statutory prohibition on the Workers' Compensation Court's authority to set aside compromise settlement agreements, and that therefore, pursuant to § 39-71-2905, MCA, the Workers' Compensation Court had jurisdiction to decide this dispute since it related to benefits provided for by the Workers' Compensation Act.

## II

Did the express language in the settlement agreement preclude the Workers' Compensation Court from setting aside that agreement?

The defendant contends that the following language found in its contract with the claimant prohibits setting that agreement aside based upon a mutual mistake about the claimant's physical condition.

> The claimant understands that by entering into a full and final compromise settlement both the named insurer and the claimant agree to assume the risk that the condition of the claimant, as indicated by reasonable investigation to date, may be other than it appears, or it may change in the future.

However, as previously noted, we held in *Kienas* that "[t]he law of contracts applies in construing and determining the validity and enforceability of the settlement agreement." *Kienas*, 624 P.2d at 2.

The law of contracts in Montana, as it relates to the formation of a valid and enforceable contract, is set forth in Title 28, ch. 2, of the Montana Code Annotated. Section 28-2-102, MCA, requires that to be enforceable the parties must give their consent to a contract. Section 28-2-301, MCA, requires that

15

consent must be freely given; and § 28-2-401, MCA, provides that consent cannot be freely given when it is based upon mistake. Section 28-2-409, MCA, requires that before a contract is voidable based upon mistake of fact, the mistake must be material; and we have previously held that a mistake about the nature or extent of the claimant's physical condition is a "material" mistake of fact when applied to a workers' compensation settlement agreement. *See Kienas*, 624 P.2d at 3.

In order to enforce the aforementioned provision in the appellant's settlement agreement, we would have to ignore the public policy of the State of Montana as set forth in the above statutes and decisions of this Court. Any contractual provision which would require for its enforcement that we do that is "unlawful" according to the following provisions of § 28-2-701, MCA, which state:

> **What is unlawful.** That is not lawful which is:
> (1)  contrary to an express provision of law;
> (2)  contrary to the policy of express law, though not expressly prohibited; or
> (3)  otherwise contrary to good morals.

According to § 28-2-707, MCA, any provision in a contract which is unlawful is void.

Whether or not there was a mutual mistake was a question of fact to be decided by the Workers' Compensation Court. The Workers' Compensation Court's finding that the parties were mistaken about a material fact after considering the language

16

inserted into the contract by the State Fund was supported by substantial evidence.

For these reasons, we hold that the language of the settlement agreement relied upon by the appellant did not preclude the Workers' Compensation Court from setting aside that agreement.

### III

Did the Workers' Compensation Court abuse its discretion and commit reversible error when it substantially adopted the findings of fact, conclusions of law, and judgment proposed by the claimant?

Appellant argues that the Workers' Compensation Court committed reversible error by substantially adopting the proposed Findings, Conclusions, and Judgment of the claimant.[1] Appellant relies on prior decisions of this Court such as *Sawyer-Adecor Int'l., Inc. v. Anglin* (1982), 198 Mont. 440, 646 P.2d 1194, in which we expressed our disapproval of adopting verbatim the prevailing party's proposed findings of fact and conclusions of law. However, we have approved the verbatim adoption of findings and conclusions where they are comprehensive and detailed and supported by the evidence. *Pipinich v. Battershell* (1988), 232 Mont. 507, 759 P.2d 148. In that case we noted:

---

[1]The claimant's proposals were not adopted in their entirety. The hearing examiner rejected claimant's proposed Conclusion that claimant was entitled to assessment of a 20 percent statutory penalty based upon the unreasonable refusal of appellant to reopen his case.

17

However, Montana law allows verbatim adoption of findings and conclusions where they are comprehensive and detailed, supported by the evidence before the court, and are not clearly erroneous. *Olson v. McQueary* (Mont. 1984), [212 Mont. 173,] 687 P.2d 712, 715, 41 St.Rep. 1669; *R.L.S. v. Barkhoff* (1983), 207 Mont. 199, 674 P.2d 1082, 1085.

*Pipinich*, 759 P.2d at 150.

Furthermore, since *Sawyer-Adecor* was decided, Rule 52(a), M.R.Civ.P., was amended in 1984 to provide:

The court may require any party to submit proposed findings of fact and conclusions of law for the court's consideration and the court may adopt any such proposed findings or conclusions so long as they are supported by the evidence and law of the case.

While it is true that pursuant to § 39-71-2903, MCA, the Workers' Compensation Court is governed by the Montana Administrative Procedure Act, rather than the Montana Rules of Civil Procedure, there is nothing in the Administrative Procedure Act, nor in the rules of the Workers' Compensation Court, which would prohibit the verbatim adoption of the prevailing party's proposed findings, conclusions, and judgment. In that event, we have previously stated that:

The Workers' Compensation Court, while not governed by the Rules of Civil Procedure, may be guided by them, and to the extent that reference to those rules lies within the discretion the court may exercise under §2.52.224, A.R.M. [now 24.5.349, ARM], such reference is acceptable.

*Moen v. Peter Kiewit & Sons Co.* (1982), 201 Mont. 425, 434, 655 P.2d 482, 486.

18

Upon review of the record in this case and the trial court's findings and conclusions, we hold that the Workers' Compensation Court did not err in substantially adopting claimant's proposed Findings, Conclusions, and Judgment.

## IV

Was there substantial evidence to support the Workers' Compensation Court's determination that a mutual mistake of fact existed at the time the parties entered into their settlement agreement?

Appellant argues that to find a mutual mistake the trial court had to find that the cartilaginous rim of claimant's right glenoid cavity was detached at the time the settlement agreement was entered into, and that it was detached as a result of claimant's work related accident that occurred in 1980. Appellant contends that there was insufficient medical evidence to establish these facts and therefore, the necessary mistake of a material fact was not proven. The scope of our review of factual findings made in the Workers' Compensation Court is limited. The well-settled standard of review in cases appealed from the Workers' Compensation Court is stated in *Nielsen v. Beaver Pond, Inc.* (1983), 203 Mont. 339, 661 P.2d 47:

> "'Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of evidence on questions of fact. Where there is

substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. *Steffes v. 93 Leasing Co., Inc. (U.S.F.&G.)* (1978), 177 Mont. 83, 86, 87, 580 P.2d 440, 452.' [*Pinion v. H.C. Smith Co.* (1980), ___ Mont. ___,] 619 P.2d at [167] 168." [37 St.Rep. 1355, 1357]; *Novak v. Montgomery Ward and Co.* (1981), Mont., [195 Mont. 219, 222] 638 P.2d 390, 392, 38 St.Rep. 1803; *Viets v. Sweet Grass County* (1978), 178 Mont. 337, 583 P.2d 1070, 1071, 1072.

*Nielsen*, 661 P.2d at 49.

In defining substantial evidence, we stated in *State Highway Commission v. Arms* (1974), 163 Mont. 487, 518 P.2d 35, that:

The evidence may be inherently weak and still be deemed substantial, and one witness may be sufficient to establish the preponderance of a case. Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308.

*Arms*, 518 P.2d at 37.

Our review then is necessarily limited to whether the testimony of one qualified and credible witness established that claimant's labrum or cartilaginous rim of his right glenoid cavity was injured at the time of his settlement agreement with appellant. Appellant contends that Dr. Teal, the only medical witness who testified in this case, was unable to express an opinion. However, our review of the record requires a contrary conclusion.

Dr. Teal gave the following answers in response to the following questions:

Q.  Alright. Now, would you be able to give an opinion as to whether or not, absent any other trauma to that shoulder, that the subluxation and the detached glenoid was likely the result of the injury sustained in his industrial accident of 1980?

20

. . . .

A.   I think, first of all, that there was an injury that led to this condition, almost certainly. Which is to say trauma. There was some trauma that led to this condition of recurrent subluxation. And if your question to me, as I think it is, states in the absence of any other trauma is it my opinion that this cave-in trauma produced the injury, then I'd have to say yes. If there was no other trauma, then this must have been it.

Q.   Okay. Now, is there any other injuries that you are aware of that involves the right shoulder that we have not discussed this morning?

. . . .

A.   No.

Claimant clearly and unequivocally testified that he sustained no trauma to his right shoulder either before or after his industrial injury that occurred on March 28, 1980. This testimony, in combination with the above testimony of his treating physician, provided substantial evidence for the trial court's finding that claimant's injury to his right shoulder was caused by his industrial accident, that the parties were unaware of its existence at the time the settlement agreement was entered into, and that the existence of this condition was material to a determination of the disability benefits to which claimant was entitled.

We conclude that there was substantial evidence of a mutual mistake of fact and that the trial court's finding in that regard should be affirmed.

## V

Was there substantial evidence to support the Workers' Compensation Court's award of temporary total disability benefits retroactive to October 1, 1985?

Claimant testified that due to the extreme pain in his right shoulder he had to terminate his employment in Idaho on October 1, 1985. He returned to Montana where he worked sporadically as a farm laborer between then and his surgery in April 1987. However, these activities were also limited due to the pain in his shoulder, and it was because of the continuing pain that further surgery was performed. There was no evidence that claimant worked regularly or earned any significant income after his return from Idaho.

The medical reports from the orthopedic specialists who examined claimant were unanimous in their conclusion that he was precluded from doing the types of farm work, construction work, and oilfield work which had been his traditional source of employment and that following his most recent surgery he should be rehabilitated for lighter duty work.

Based upon the intermittent work that claimant admitted performing after his return from Idaho, appellant argues that the trial court erred by concluding that claimant was temporarily totally disabled during that period of time. However, appellant's position is not consistent with our prior decisions. In *Jensen v. Zook Bros. Const. Co.* (1978), 178 Mont. 59, 582 P.2d 1191, claimant sustained

a crushing injury to his left hand while employed as a construction worker. The defendant appealed from a Workers' Compensation Court finding that the claimant was permanently totally disabled. The basis for its appeal was that claimant had been able to do odd jobs since his injury and therefore, could not be totally disabled. In that case, the claimant testified that he had done "odd jobs for friends and relatives, such as back tagging cattle, driving a Cat, haying and other odd jobs. He also testified that he had difficulty performing these jobs and he could not perform them for any length of time." *Jensen*, 582 P.2d at 1193. The testimony of the claimant in that case was strikingly similar to the testimony of the claimant in this case. In spite of that testimony, we concluded as follows:

> We hold that this evidence is sufficient to support the finding of the Workers' Compensation Court that claimant is permanently and totally disabled despite the fact that he can and has done various odd jobs. . . .
>
> Because claimant can perform a few odd jobs for short periods of time does not preclude a finding that claimant is totally and permanently disabled. This is especially true where, as here, the evidence shows that the claimant must work with a substantial degree of pain.

*Jensen*, 582 P.2d at 1193.

The medical opinions in this case establish that claimant is no longer capable of returning to his former occupations and that rehabilitation is necessary. There was no qualified evidence offered by appellant that claimant was at any time subsequent to October 1, 1985, capable of returning to regular employment.

23

For these reasons, and based upon the foregoing authority, we hold that the evidence is sufficient to support a finding that claimant is temporarily totally disabled, and has been since October 1, 1985.

## VI

Was the claimant entitled to an award of costs and attorney fees?

Appellant's argument that claimant was not entitled to an award of costs and attorney fees pursuant to § 39-71-611, MCA, was based upon its contention that claimant was not entitled to reopen his claim and receive further benefits. However, since we have affirmed the trial court's award of benefits to claimant, we conclude that he is also entitled to an award of reasonable costs and attorney fees pursuant to § 39-71-611, MCA.

## CROSS-APPEAL

Did the Workers' Compensation Court err by failing to impose a statutory 20 percent penalty on appellant in addition to the benefits that were awarded?

Section 39-71-2907, MCA (1985), provided that:

When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20%.

24

In this case, the trial court adopted claimant's proposed Finding of Fact No. 61 which stated, in part, that:

> Also, the Defendant failed to initiate a good faith investigation to ascertain if the March 28, 1980, industrial accident could have caused or resulted in the glenoid rim becoming detached from the labrum. The fact that Defendant conducted a review of the file and thereafter concluded that reopening could not be allowed simply because the Division had approved the settlement, in absence of Defendant contacting the treating physicians, does not constitute a good faith investigation as contemplated by statute or case law. Defendant's refusal to reopen the claim and its denial of the claim for additional benefits was unreasonable.

For his cross-appeal, claimant contends that this finding is inconsistent with the court's conclusion of law that claimant is not entitled to the 20 percent statutory penalty.

The trial court concluded that because appellant incurred medical expense to send claimant a considerable distance to a highly qualified specialist it should not be penalized.

Where the trial court has arrived at a finding or conclusion which is supported by substantial evidence, we will not reverse the lower court, even though the finding or conclusion may have been arrived at for the wrong reason. *Phillips v. City of Billings* (1988), 233 Mont. 249, 252, 758 P.2d 772, 774. In this case, we conclude that there was justification for the lower court's refusal to impose the statutory penalty, even though appellant did fail to properly investigate and determine whether it was mistaken about the nature of claimant's injury at the time of the agreement.

In addition to the issue of whether or not there was a mistake of material fact, appellant felt it was justified in rejecting claimant's request based upon the language in its written agreement with claimant. Enforceability of such a contract provision had not previously been ruled upon by this Court. Therefore, we hold that appellant's reliance on that contract language was not unreasonable, as required by § 39-71-2907, MCA.

For these reasons, we affirm the judgment of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

26