NO.   95-543

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


SHERMAN  BARTLETT,

          Plaintiff  and  Appellant,

     v.

ALLSTATE  INSURANCE  COMPANY.,

          Defendant  and  Respondent.

FILED

DEC 10 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Roderick K. Ermatinger; Attorneys, Inc.;
               Missoula, Montana

          For Respondent:

               Steven S. Carey; Carey, Meismer & McKeon;
               Missoula, Montana


                    Submitted on Briefs:  September 12, 1996

                              Decided:  December 10, 1996

Filed:

Justice Charles E. Erdmann delivered the opinion of the Court.

Sherman Bartlett appeals from opinions and orders issued by the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Allstate Insurance Company. We affirm in part and reverse in part.

We address the following issues on appeal:

1. Did the District Court err in determining that Bartlett did not have an insurable interest in the property at the time of loss?

2. Did the District Court err in determining that Bartlett did not have colorable claims for unfair trade practices or for fraud, constructive fraud, or punitive damages?

3. Did the District Court err in managing discovery or in awarding costs?

On appeal, the appellant also raised the issue of whether the District Court erred in ruling that material misrepresentations on the application for insurance precluded recovery. However, we affirm the District Court's grant of summary judgment to Allstate on the basis of our holding in Issue 1, and therefore determine it is not necessary to discuss this issue.

FACTS

In November 1990, Bartlett entered into a buy-sell agreement with the Montana Bank of Mineral County to purchase a residence and one acre of land in Missoula for $31,000. The Bank agreed to close the transaction on November 28, 1990, and instructed Bartlett that he must obtain an insurance binder on the property before closing.

On November 27, 1990, Bartlett met with an agent from Allstate Insurance Company, Surilda Hanks, to obtain the insurance binder. Hanks prepared an application for a landlord's package policy in which Allstate agreed to insure the property, naming Bartlett as the insured and the Bank as loss payee under the policy as first mortgagee. Hanks completed the application in Bartlett's presence based upon information Bartlett provided to her. The completed application indicated that the purchase price for the property was $50,000 and that the property had not been vacant for more than thirty days. Allstate insured the dwelling for $68,000 and Bartlett's personal property for $3,400. Bartlett signed the application and the insurance was to become effective on November 28, 1990.

On November 28, 1990, Bartlett and the Bank president met to transfer the deed and trust indenture. The Bank had discovered a prior lien against Bartlett for a $10,000 child support judgment and was concerned that this lien would attach to the property and therefore declined to proceed with the closing. Bartlett notified Hanks the same day that the transaction had not closed. As a result, Hanks did not submit the binder to Allstate and Allstate never processed the policy. Bartlett never paid a premium for insurance coverage.

On December 23, 1990, a fire completely destroyed the home Bartlett intended to purchase. In January 1991, Bartlett made a demand upon Allstate requesting the full policy limits of $71,400 plus interest. Allstate denied Bartlett's demand, stating that the

3

binder was intended to become effective at the time of closing, which never occurred. Allstate claimed that Bartlett had cancelled the policy prior to the fire when he called Hanks to inform her that the closing had not taken place, and that, in any event, the Bank had assumed the risk of loss. In October 1992, the Bank assigned any interest it may have had in the insurance policy to Bartlett.

On November 24, 1992, Bartlett filed a complaint and demand for jury trial against Allstate seeking to recover for wrongful denial of the insurance proceeds. In April 1994, Bartlett filed an amended complaint alleging that, in addition to the original claims, Allstate violated § 33-18-201, MCA, which is Montana's prohibition against unfair trade practices. Each party filed motions for summary judgment, and on August 31, 1994, the District Court issued an opinion and order granting summary judgment in Allstate's favor and dismissed all of Bartlett's claims. The District Court determined that the policy was void *ab initio* because of material misrepresentations, that the buy-sell agreement did not provide Bartlett with an insurable interest, and that the Bank's assignment of its interest in the policy to Bartlett failed. The court dismissed Bartlett's claims, including those for fraud, constructive fraud, and unfair trade practices, and determined that Bartlett had no claim for punitive damages.

On the same day the court issued its summary judgment ruling, it issued an order in response to motions filed by each party. Allstate had moved the court for a protective order on discovery

related to the unfair trade practices claim, alleging that Bartlett was pursuing discovery beyond the limits allowed by the Montana Rules of Civil Procedure. Bartlett had also filed a motion to compel the production of a statement given by Hanks after the insurance binder had been signed. The District Court granted Allstate's motion and stayed further discovery, and denied Bartlett's motion. The court also awarded Allstate certain costs for depositions which had been taken.

Bartlett subsequently filed a motion to amend or alter the District Court's summary judgment order. On November 4, 1994, the court issued an opinion and order reaffirming its decision on summary judgment but vacating its summary judgment ruling on the unfair trade practices claim. The court continued its protective order concerning discovery on that claim. On December 22, 1994, the District Court issued an opinion and order awarding costs to Allstate in the amount of $1,414, and on July 14, 1995, the court granted Allstate's motion for summary judgment on the unfair trade practices claim. This appeal followed.

STANDARD OF REVIEW

Our standard of review in appeals from summary judgment is de *novo*. Motarie v. Northern Mont. Joint Refuse Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P Bruner v.

5

Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

In Bruner we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does not exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by the district court as to whether the court erred.

Bruner, 900 P.2d at 903.

## ISSUE 1

Did the District Court err in determining that Bartlett did not have an insurable interest in the property at the time of loss?

Bartlett argues that he had an insurable interest in the property at the time of the loss. He claims that the buy-sell agreement between him and the Bank was legally binding on both parties. The agreement obligated the Bank to transfer title to the property to Bartlett and in turn Bartlett was obligated to purchase the property. Bartlett argues that at the time of the loss the buy-sell agreement was still legally enforceable since neither party had terminated it

Bartlett also contends that he is entitled to the Bank's interest under the binder, relying on the fact that the Bank assigned its interest in the binder to him in October 1992. Bartlett argues that even if his interest was voided due to material misrepresentations on the insurance application, a mortgagee's interest remains protected. He claims he is entitled

6

to receive from Allstate the Bank's monetary interest in the policy.

Section 33-15-205, MCA, provides that no contract of insurance shall be enforceable except for the benefit of persons having an insurable interest in the property at the **time** of the loss. Subsection (2) defines "insurable interest" as any actual, lawful, and substantial economic interest in the safety or preservation of the property insured. A purchaser of real estate may have an insurable interest in property to which he or she does not hold title if an enforceable executory contract has been executed which gives the purchaser the right to possess the property. See Musselman v. Mountain West Farm Bureau Mut. Ins. Co. (1992), 251 Mont. 262, 824 P.2d 271.

In the present case, the buy-sell agreement executed by the parties stated that Bartlett would execute a promissory note in favor of the Bank and that the property would be secured with a first position trust indenture. The terms of the buy-sell agreement clearly made the sale contingent upon the Bank holding a first position trust indenture. When the Bank discovered a $10,000 unsatisfied child support judgment against Bartlett, it could not be assured of a first position security interest. Bartlett did not eliminate the judgment lien and the condition precedent to the buy-sell agreement becoming effective was not met. The agreement was therefore terminated and the Bank was the unconditional owner of the property.

Moreover, our examination of the record substantiates the fact that Bartlett did not believe he owned the property at the time of the loss. Hanks testified that Bartlett called her and told her that the deal did not go through and that he did not need the insurance. Hanks testified that following the fire Bartlett called her to ask about the insurance. She said she had done nothing "because you told me not to." Bartlett responded by stating "[w]ell, that's a good thing because the house burned down last night." Scott Waldron, the Fire Chief who responded to the fire, testified that he spoke with Bartlett at the scene of the fire. According to Waldron, Bartlett said he had not been there that night, that he did not own the property, and the Bank was the one with the problem.

Finally, Bartlett's attempt to bootstrap into the Bank's rights to recover under the policy is baseless. The record clearly indicates that the Bank took the unequivocal position that it had no interest in the policy because the deal had never gone through. In fact, the record indicates that the Bank looked to its own blanket insurance policy for coverage. The Bank had no interest in the binder which it assigned to Bartlett and therefore neither did Bartlett as the assignee.

We conclude that the District Court did not err when it concluded that Bartlett did not have an insurable interest in the property at the time of loss, and on that basis affirm the court's summary judgment ruling.

8

ISSUE 2

Did the District Court err in determining that Bartlett did not have colorable claims for unfair trade practices or for fraud, constructive fraud, or punitive damages?

The District Court granted summary judgment to Allstate on Bartlett's unfair trade practices claim, stating that no policy coverage existed and Allstate therefore had a reasonable basis in law or fact to deny coverage. Bartlett, however, argues that discovery is essential to determine whether Allstate had a reasonable basis to deny the insurance claim and therefore requests this Court to reverse not only the District Court's grant of summary judgment to Allstate but also to reverse the court's order which precluded discovery on the matter.

Bartlett argues that § 33-18-242, MCA, entitles him to maintain a third-party action against Allstate for unfair trade practices. He argues that his claim is based only in part on the existence of the insurance policy and therefore even if the insurance policy is found to be void, his claim survives.

We first note that in the context of bad faith tort actions, a third-party claimant is typically a person who has a claim against the insured party for certain injuries. See O'Fallon v. Farmers Ins. Exchange (1993), 260 Mont. 233, 859 P.2d 1008; Klaudt v. Flink (1982), 202 Mont. 247, 658 P.2d 1065. Here, that is not the case since Bartlett alleges he is a third-party claimant even though he also claims to be the insured party. Without addressing the question of whether Bartlett is or is not a third-party

9

claimant, as that term is used in § 33-18-242, MCA, we determine that his claim must fail.

Section 33-18-242(5), MCA, states that an insurer may not be held liable for unfair trade practices if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is at issue. Here, we have affirmed the District Court's determination that Bartlett did not have an insurable interest in the property and, on that basis, Allstate clearly had a reasonable basis for not paying Bartlett's claim for insurance proceeds. We therefore conclude that the District Court did not err when it determined that Bartlett did not have a colorable claim against Allstate for unfair trade practices.

With respect to Bartlett's claim for fraud, Rule 9(b), M.R.Civ.P., requires that the circumstances constituting fraud must be stated with particularity in the pleadings. In order to prove fraud, the plaintiff must establish nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer's ignorance of falsity of the representation; (7) the hearer must rely on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by reliance on the representation. Pipinich v. Battershell (1988), 232 Mont. 507, 511, 759 P.2d 148, 151.

This Court has held that if the specific facts constituting the alleged fraud are not stated with particularity, the claim must

10

be dismissed. See Pipinich, 759 P.2d at 150-51; Martin v. Dorn Equip. CO. (1991), 250 Mont. 422, 429, 821 P.2d 1025, 1029. Bartlett's amended complaint simply stated that "Defendant is liable to Plaintiff for fraud for reasons set forth herein." The amended complaint clearly fails to set forth the allegation of fraud with sufficient specificity. We therefore conclude that the District Court did not err when it dismissed Bartlett's claim for fraud.

Bartlett also alleges constructive fraud based upon the allegation that Hanks created a false impression that he was insured and that she failed to disclose that information provided by Bartlett concerning the package deal and vacancy would likely cause Allstate to void the policy.

Section 28-2-406, MCA, defines constructive fraud as (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him, or (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud. Here, the record does not support Bartlett's claim for constructive fraud.

Hanks testified that she told Bartlett that Allstate did not insure vacant houses. She also testified that on November 30, 1990, two days after Bartlett had initially informed her that the closing had not occurred, Bartlett informed her "I don't have a deal, the deal is done, there's nothing going on, I don't need the

insurance." Furthermore, Bartlett's own actions indicate he did not believe he needed insurance. He cannot now be allowed to claim that Hanks misrepresented information to him causing him to believe he was insured. We therefore conclude that the District Court did not err when it dismissed Bartlett's claim for constructive fraud.

Finally, we determine that the District Court did not err in dismissing Bartlett's claim for punitive damages. Section 27-1-221, MCA, allows for an award of punitive damages if the defendant is found liable for fraud or actual malice. In light of our holdings above, we conclude that the court correctly rejected Bartlett's claim for punitive damages.

ISSUE 3

Did the District Court err in managing discovery or in awarding costs?

Bartlett argues that the District Court erred by issuing its protective order staying discovery related to the unfair trade practices claim. He also argues that the court erred when it denied his request to compel the production of a recorded statement made by Hanks to Allstate in January 1991.

We have stated that the district court has inherent discretionary power to control discovery under its authority to control trial administration and that the lower court is in a better position than this Court to supervise the day-to-day operations of discovery. State ex rel. Guarantee Ins. Co. v. District Court (1981), 194 Mont. 64, 67-68, 634 P.2d 648, 650. We have stated that the objective of the district court in controlling

12

and regulating discovery is to ensure a fair trial to all concerned, neither according one party an unfair advantage nor placing the other at a disadvantage. Hobbs v. Pacific Hide & Fur Depot (1989), 236 Mont. 503, 512, 771 P.2d 125, 131.

Here, in light of our holding above that Allstate had a reasonable basis for denying Bartlett's claim due to the lack of an insurable interest, we determine that the District Court did not abuse its discretion when it issued the protective order concerning discovery with respect to the unfair trade practices claim.

However, we conclude that the District Court abused its discretion when it denied Bartlett's motion to compel Hanks' statement. Rule 612, M.R.Evid., provides that if, before testifying, a witness uses a writing to refresh his or her memory, then the adverse party is entitled to have the writing produced. Here, both Jeffery Mann, Allstate's underwriter, and Hanks reviewed Hanks' January 1991 statement prior to testifying in their depositions and the court, therefore, erred in not compelling the production of Hanks' statement. Nevertheless, in light of our holdings above, we determine that the court's error in this regard is harmless.

Bartlett also argues that the District Court erred in awarding costs in the amount of $1,414 to Allstate. Specifically, Bartlett claims that he should not be required to pay the transcription costs of the video taped depositions of Hanks and Mann. Bartlett relies on Rule 30(h), M.R.Civ.P., which allows for an audio-visual or tape recorded deposition without a stenographic record.

13

We have stated that the court is empowered to award costs to the prevailing party on summary judgment and to include the costs of depositions as long as they are reasonable in amount and necessary to the summary judgment. Harrison v. Chance (1990), 244 Mont. 215, 227, 797 P.2d 200, 207. Section 25-10-103, MCA, provides that the court has the discretionary power to apportion costs between the parties, and § 25-10-201(2), MCA, lists expenses of taking depositions as allowable costs.

In this case, the District Court granted summary judgment to Allstate based not only on the fact that Bartlett did not have an insurable interest in the property, but also because the application for insurance contained material misrepresentations. However, since our holding is based only on the fact that Bartlett did not have an insurable interest, we determine that the court's award of costs should reflect only those costs which were necessary for that purpose. We therefore reverse the District Court's award of costs and remand the case to the court for a determination of which costs were necessary for summary judgment on the basis of Bartlett's lack of an insurable interest in the property.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Justice

14

We concur:

_____
William E. Hunt, Sr.

_____

_____
Terry Trieweiler

_____
Karla M. Gray
        Justices